1   DAVIS & GILBERT LLP
    PAUL F. CORCORAN (*Pro hac vice* application pending)
2   PCorcoran@dglaw.com
    1740 Broadway
3   New York, NY 10019
    Telephone: (212) 468-4800
4   Facsimile: (212) 468-4888

5   VENABLE LLP
    BEN D. WHITWELL (Cal. Bar No. 138426)
6   bwhitwell@venable.com
    JEFFREY M. TANZER (Cal. Bar No. 129437)
7   jtanzer@venable.com
    2049 Century Park East, Suite 2100
8   Los Angeles, California 90067
    Telephone: (310) 229-9900
9   Facsimile: (310) 229-9901

10  Attorneys for Plaintiff

11

12          UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA

14

15  WPP LUXEMBOURG GAMMA          Case No.: CV09-02487 PA PLAx
    THREE SARL, on its own behalf and
16  derivatively on behalf of SPOT
    RUNNER, INC.,                 **VERIFIED COMPLAINT FOR**
17                                **SECURITIES FRAUD, VIOLATIONS**
                   Plaintiff,     **OF CALIFORNIA CORPORATIONS**
18                                **CODE, BREACH OF FIDUCIARY**
                                  **DUTY, CONSTRUCTIVE TRUST,**
19          v.                    **AND BREACH OF CONTRACT**
20
21  SPOT RUNNER INC., NICK GROUF,
    DAVID WAXMAN, DANNY RIMER,
22  ROGER LEE, ROBERT PITTMAN,
    PETER HUIE, BATTERY VENTURES
23  VI, L.P., BATTERY INVESTMENT
    PARTNERS VI, LLC, BATTERY
24  VENTURES VII, L.P., BATTERY
    INVESTMENT PARTNERS VII, LLC,
25  INDEX VENTURES III (JERSEY) L.P.,
    INDEX VENTURES III (DELAWARE)
26  L.P., INDEX VENTURES III
27
28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

234554/v.2

COMPLAINT

PARALLEL ENTREPRENEUR FUND
(JERSEY) L.P.,

Defendants.

Plaintiff WPP Luxembourg Gamma Three Sarl ("WPP" or "Plaintiff") on its own behalf and derivatively on behalf of Spot Runner Inc. (the "Company" or "Spot Runner") , by its attorneys, Davis & Gilbert LLP and Venable LLP, for its Complaint against defendants Spot Runner Inc., Nick Grouf ("Grouf"), David Waxman ("Waxman"), Danny Rimer ("Rimer"), Roger Lee ("Lee"), Robert Pittman ("Pittman") (Grouf, Waxman, Rimer, Lee and Pittman together the "Directors"), Peter Huie ("Huie"), Battery Ventures VI, L.P., Battery Investment Partners VI, LLC, Battery Ventures VII, L.P., Battery Investment Partners VII, LLC (the Battery entities together "Battery"), Index Ventures III (Jersey) L.P., Index Ventures III (Delaware) L.P., Index Ventures III Parallel Entrepreneur Fund (Jersey) L.P. (the Index entities together "Index") (all defendants collectively, "Defendants" or "Insiders"), alleges as follows:

## NATURE OF THE ACTION

1.     WPP brings this action individually on its own behalf and also as a derivative action within the meaning of Rule 23.1 of the Federal Rules of Civil Procedure (the "Federal Rules") on behalf of Spot Runner to enforce the rights of the Company.

2.     With regard to the derivative claims, WPP has not made demand on the Company for the actions requested in Complaint because demand would be futile. None of the directors of the Company are disinterested and independent because all have engaged in self-dealing in connection with this matter, as alleged below.

3.     This action brings claims for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; violation of California securities laws; breach of fiduciary duty to Spot Runner, and for the imposition of a

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

234554/v.2

1  constructive trust on the proceeds of improper secondary sales of stock by the majority

2  stockholders; breach of fiduciary duty to WPP as minority stockholder; breach of the

3  Right of First Refusal and Co-Sale Agreement; breach of the Board Observer Rights

4  Agreement.

5  ## THE PARTIES

6      4.    WPP is a Luxembourg corporation, which maintains its principal place of

7  business at Rue Heine, 6, L1720 Luxembourg, Luxembourg.  WPP is a subsidiary of

8  WPP Plc, a global communications agency, with partner companies specializing in all

9  areas of communications, including advertising, direct marketing, and public relations.

10  WPP Plc is the largest media buyer in the world.

11      5.    Spot Runner is a Delaware corporation which maintains its principal place

12  of business at 6300 Wilshire Boulevard, 21st Floor, Los Angeles, CA 90048.  Spot

13  Runner is a start-up media buying corporation which was purportedly developing an

14  innovative internet platform to allow small businesses to purchase cable and broadcast

15  TV advertising services online.

16      6.    Upon information and belief, defendant Nick Grouf is a resident of

17  California.  Grouf is a founder of Spot Runner, its current Chief Executive Officer

18  (CEO), and Chairman of the Board of Directors.  Grouf was CEO and Chairman of the

19  Board of Directors at all times relevant to this action.

20      7.    Upon information and belief, defendant David Waxman is a resident of

21  California.  Waxman is a founder of Spot Runner, its current Chief Technology Officer

22  (CTO), and a member of its Board of Directors.  Waxman was a director of the

23  Company at all times relevant to this action.

24      8.    Upon information and belief, defendant Danny Rimer is a resident of the

25  United Kingdom.  Rimer is a member of Spot Runner's Board of Directors.  Rimer was

26  a director of the Company at all times relevant to this action.

27      9.    Upon information and belief, defendant Roger Lee is a resident of

28  California.  Lee is a member of Spot Runner's Board of Directors.  Lee was a director

**VENABLE LLP**
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

3

1   of the Company at all times relevant to this action.

2   10.    Upon information and belief, defendant Robert Pittman is a resident of
3   New York.  Pittman is a member of Spot Runner's Board of Directors.  Pittman was a
4   director of the Company at all times relevant to this action.

5   11.    Upon information and belief, defendant Peter Huie is a resident of
6   California.  Huie is General Counsel to Spot Runner.  Huie was General Counsel to the
7   Company at all times relevant to this action.

8   12.    Upon information and belief, defendant Battery Ventures VI, L.P. is a
9   limited partnership with its principal place of business at 2884 Sand Hill Road, Suite
10  101, Menlo Park, CA 94025.

11  13.    Upon information and belief, defendant Battery Investment Partners VI,
12  LLC, is a Delaware corporation with its principal place of business at 2884 Sand Hill
13  Road, Suite 101, Menlo Park, CA 94025.

14  14.    Upon information and belief, defendant Battery Ventures VII, L.P. is a
15  partnership with its principal place of business at 2884 Sand Hill Road, Suite 101,
16  Menlo Park, CA 94025.

17  15.    Upon information and belief, defendant Battery Investment Partners VII,
18  LLC is a Delaware corporation with its principal place of business at 2884 Sand Hill
19  Road, Suite 101, Menlo Park, CA 94025.

20  16.    Upon information and belief, defendant Index Ventures III (Jersey) L.P. is
21  a partnership with its principal place of business at No. 1 Seaton Place, St. Helier,
22  Jersey JE4 8Y J, Channel Islands, England.

23  17.    Upon information and belief, defendant Index Ventures III (Delaware) L.P.
24  is a limited partnership with its principal place of business at its principal place of
25  business at No. 1 Seaton Place, St. Helier, Jersey JE4 8Y J, Channel Islands, England.

26  18.    Upon information and belief, defendant Index Ventures III Parallel
27  Entrepreneur Fund (Jersey) L.P. is a limited partnership with its principal place of
28  business at No. 1 Seaton Place, St. Helier, Jersey JE4 8Y J, Channel Islands, England.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

4

**JURISDICTION AND VENUE**

19.     This Court has jurisdiction under the securities laws of the United States, 15 § U.S.C. 78aa, and under the Judicial Code of the United States, 28 U.S.C. § 1331. This Court has supplemental jurisdiction over WPP's state law claims under 28 U.S.C. § 1367(a).

20.     Venue is appropriate in the Central District of California under 28 U.S.C. §§ 1391(b) and 1401 because a substantial part of the events and omissions giving rise to the claims occurred there, and because the May 2007 Stock Purchase Agreement fixes the federal or state courts of the County of Los Angeles, California as the venue for lawsuits arising out of the Agreement, and under 15 U.S.C. § 78aa because some of the defendants are found in and/or transact business in this District.

21.     This individual and derivative action is not a collusive one to confer jurisdiction on a Court of the United States which it would not otherwise have.

**FACTS COMMON TO ALL CLAIMS**

22.     Spot Runner was founded in 2004 by Adam Shaw ("Shaw"), Grouf and Waxman (collectively the "Founders").  It is a "start-up" company reliant on investments by venture capital funds and has yet to make a profit from the sale of products or services.

23.     Spot Runner's purported main product, still in development, is an internet media-buying platform called Project Malibu, which it promotes as an innovative way for small businesses to purchase cable and broadcast TV advertising services online.

24.     Upon information and belief, before seeking any public financing of the company, Grouf, Waxman and Shaw awarded themselves approximately 31 million, 3.5 million and 435,000 shares of the Company, respectively, with little or no investment of cash.

25.     Battery and Index are the holders of Series A and Series B preferred stock of Spot Runner, having acquired approximately 14.8 million and 14.7 million shares respectively in early 2006 for a cash investment of approximately $6 million each.

234554/v.2

COMPLAINT

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

26.     Battery and Index's ownership of Series A and B preferred stock make them the majority preferred stockholders in the Company. When acting together and in concert with the Founders, they, as a group, hold the majority of the voting shares in the Company.

27.     Pursuant to Battery and Index's investment in the Company, Spot Runner agreed with Battery and Index that each would have the right to appoint one member of Spot Runner's Board of Directors.

28.     Index appointed Rimer as its representative to Spot Runner's Board of Directors.

29.     Battery appointed Lee as its representative to Spot Runner's Board of Directors.

30.     At all relevant times, the Board of Directors of the Company (the "Board") consisted of five members: Grouf, Waxman, Rimer sitting as the Index representative, Lee sitting as the Battery representative, and Robert Pittman (the "Directors" or "Director Defendants").

***WPP's investment in Spot Runner***

31.     In August 2006, Spot Runner decided to raise additional capital and held another round of financing ("the Series C Financing Round"). WPP invested in Spot Runner in this round on or around August 29, 2006.

32.     WPP purchased 2,710,027 shares of Spot Runner Series C preferred stock at $3.69 per share for a total investment of approximately $10 million. At the time, this investment gave WPP approximately 62 percent of the class of Series C preferred stock, or about 4 percent of the outstanding stock of Spot Runner on a fully diluted basis.

33.     WPP's August 2006 purchase of Series C preferred stock made it the largest single investor in Spot Runner at the time.

34.     To protect its investment, WPP negotiated with Spot Runner for "Board Observer Rights," in which it would have the opportunity to attend all of Spot Runner's Board meetings and be provided any information that the Board members received.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

234554/v.2

35.   WPP and Spot Runner entered into a letter agreement (the "Board Observer Rights Agreement") on or about August 29, 2006.

36.   The Board Observer Rights Agreement provides that:

> The Company and WPP will mutually agree (which agreement shall not be unreasonably withheld or delayed by the Company) upon a WPP representative (the "Observer") who shall be entitled to attend all meetings of the Company's Board of Directors (the "Board") in a non-voting, observer capacity.

37.   It further provides that:

> The Company shall provide to the Observer, concurrently with the members of the Board, and in the same manner, notice of each meeting of the Board and a copy of all materials provided to the members of the Board….

38.   To protect the interests of the Company and the holders of the Series A, Series B and Series C preferred stock (the "Investors"), in August 2006, the Investors also entered into the Second Amended and Restated Rights of First Refusal and Co-Sale Agreement (the "ROFR and Co-Sale Agreement") with the Company and the Founders.

39.   The ROFR and Co-Sale Agreement provides that before any shares of Spot Runner common stock could be sold or otherwise transferred by a Founder, "the Company shall have a right of first refusal (the "Right of First Refusal") to purchase such shares (the "Offered Securities")…" (§ 1.1) ("Company's Right of First Refusal").

40.   The ROFR and Co-Sale Agreement further provides that if the Company does not exercise its rights of first refusal, then each Investor (also defined in the Agreement as it is herein to mean the "purchasers of the Company's preferred stock")

> shall have the right, upon notice to the Founder at any time within forty (40) days after receipt of the Transfer Notice (the "Purchase Right Period") to purchase its Pro Rata Share of all, or such lesser amount as desired, of such Offered Securities not purchased by the Company or Nick Grouf at the Offered Price and upon the same terms (or terms as similar as

7

VENABLE LLP
2049 CENTURY PARK EAST #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

reasonably possible) upon which the Founder is proposing or is to dispose of such Offered Securities (the "Purchase Right"), and the Founder shall sell such Offered Securities to the Investors pursuant to such terms.

(§ 1.7) ("Investors' Purchase Right")

41.    The ROFR and Co-Sale Agreement also provides that if the right of first refusal is not exercised, "each Investor shall have the right to participate in any sale to a Proposed Transferee upon the same terms and conditions as set forth in the Transfer Notice…" (§ 2.1, "Right to Participate")

42.    The ROFR and Co-Sale Agreement thus provides that each Investor could sell their shares in the Company pro-rata with any disposition of common stock by the Founders.

43.    The ROFR and Co-Sale Agreement provides that the Founders were required to notify the Company and the Investors of any potential sale and of their rights by written notice.  Specifically, the Agreement provides that

Before the transfer of any Offered Securities, the Founder shall deliver to the Company… and the Investors a written notice (the "Transfer Notice") stating: (i) the Founder's bona fide intention to sell or otherwise transfer such Offered Securities; (ii) the name of each proposed purchaser or other transferee (a "Proposed Transferee"); (iii) the number of Offered Securities to be transferred to each Proposed Transferee; and (iv) the bona fide cash price or other consideration for which the Founder proposes to transfer the Offered Securities (the "Offered Price").  The Founder shall offer the Offered Securities at the Offered Price first to the Company, next to Nick Grouf (if the Founder is Adam Shaw or David Waxman and if Nick Grouf is then an employee of the Company, the Chairman of the Board of Directors or a member of the Board of Directors) and finally to the Investors.

(§ 1.2) ("Investors' Notice Rights")

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

44.     The ROFR and Co-Sale Agreement further provides that the Agreement can only be amended or waived

> by written instrument signed by the party against whom enforcement of any such amendment, waiver, or discharge or termination is sought,

but then contains a *proviso* that

> the holders of sixty percent (60%) of the Shares held by the Investors voting together may waive, discharge, terminate, modify or amend, on behalf of all Investors, any provisions hereof….

(§ 3.9) ("Amendments or Waivers")

### *The Defendants' "Pump and Dump" Scheme*

45.     The Defendants operated the Company from its inception for their own benefit instead of the best interests of the Company and its stockholders.  Rather than working to make Spot Runner a successful and profitable venture, they perpetuated a "pump-and-dump" scheme in which they aggressively promoted the Company to new investors (often by promoting that WPP was an investor in and supporter of the Company) and then sold new investors large quantities of their own secondary shares at ever-increasing valuations. Such secondary sales were accomplished surreptitiously and without the disclosures to Investors required by the controlling Investor agreements or the federal and state securities laws.

46.     Between February, 2006 and March, 2008, the Director Defendants, acting in concert with the Class A and Class B stockholders Battery and Index, and the General Counsel, Peter Huie, engaged in a scheme or artifice to defraud WPP and other investors in the Company by surreptitiously usurping corporate opportunities and

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

234554/v.2

selling off substantial quantities of their personal stockholdings in the Company, in violation of their fiduciary duties to the Company and the Investors, and in violation of federal and state securities laws.

47.   As a part of said scheme, the Defendants, acting out of self interest, and in total disregard of their fiduciary obligations to the Company and the Investors, conspired and agreed together to waive the rights of the Company and the Investors under the ROFR and Co-Sale Agreement, and to sell off large quantities of their personal stock holdings in the Company without disclosure or notice to the Investors as required by the Agreement.

48.   In order to accomplish their objectives, and to prevent the victim Investors from discovering the fraudulent scheme, the Defendants surreptitiously waived the rights of the Company and Investors under the ROFR and Co-Sale Agreement.  On multiple occasions when the Defendants were usurping a corporate funding opportunity in order to sell their own shares instead, the Director Defendants waived the rights of the Company under the ROFR and Co-Sale Agreement without disclosing the waiver at any Board of Directors meeting, thereby depriving WPP of its rights as a Board observer of any information about the proposed waivers.  Similarly, on each occasion on which the Defendants sold their shares in violation of the Investors' rights under the ROFR and Co-Sale Agreement, any waiver of those Investor rights was accomplished without any disclosure to the other Investors of a vote or waiver under paragraphs 3.1 and 3.9 of the ROFR and Co-Sale Agreement.

49.   Pursuant to said fraudulent scheme, the Defendants improperly sold more than $54 million of common shares of the Company in violation of the rights of the Company and the Investors, and at a time when the Company remained a start-up operation in need of venture capital.

50.   Upon information and belief, the Director Defendants authorized the Founders and Battery and Index to engage in these secondary share sales in violation of their fiduciary duties to the Company.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

10

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

51.     Upon information and belief, the Director Defendants deliberately conducted this process outside of formal Board meetings in order to prevent Board observer WPP from discovering the existence or magnitude of the secondary sales.

52.     The Director Defendants deliberately omitted any mention of the Founders' secondary share sales at any Board meeting.  Nor did they distribute any financial statements to WPP in its position as a Board observer at any time in 2006-2008.

53.     The Defendants, acting in concert, deliberately failed to disclose the Founders' secondary share sales to WPP, and in one instance, deliberately misrepresented to WPP that there were no secondary share sales occurring by the Founders or existing Investors when in fact there were.

54.     Upon information and belief, the Director Defendants, acting in their own self-interest, also waived the Company's rights of first refusal under Section 1.2 of the ROFR and Co-Sale Agreement, in violation of their fiduciary duties to the Company.

55.     In furtherance of the scheme, Battery and Index also used their position as 60% owners of the Investors' preferred shares to attempt to waive all the rights of other Investors, including WPP, under the ROFR and Co-Sale Agreement, including the notice rights that would have informed the Investors of any proposed secondary share sales by the Founders and selling Investors.

56.     Upon information and belief, Battery and Index conspired with the Director Defendants to waive the rights of other Investors under the ROFR and Co-Sale Agreement in return for the Company placing Battery and Index's shares in the secondary sales.

57.     This attempted waiver was made without the required vote of all the Investors that were party to the ROFR and Co-Sale Agreement in order to prevent the other Investors from learning of the scheme.

58.     With the exception of the last sale in March 2008, WPP never received prior notice of any of the Defendants' secondary sales of Company stock, either in its

11

1    capacity as Board observer or as a Preferred Stockholder.

2    *The Spring 2006 sales*

3        59.    In early 2006, before WPP invested in the Company, the Founders sold off

4    millions of dollars of their common shares.  In or around February and March 2006,

5    Grouf sold approximately 4.7 million shares at $1.64 per share for proceeds of

6    approximately $7.2 million.  Waxman also sold 527,249 shares for $811,963 and Shaw

7    sold 277,498 shares for $427,347.

8        60.    Significantly, WPP was not informed that the Founders had sold these

9    shares when it invested in Spot Runner in the Series C Financing Round in August

10   2006.  That omission was material.  Had WPP known of the Founders' sales, WPP

11   would have reconsidered its investment in the Company.  The Founders' sales of their

12   own shares would have been material to WPP because such sales were wholly at odds

13   with the venture capital fundraising being done for a start-up company, reduced the

14   Founders' personal stake in the Company's success, and suggested that the Founders

15   did not believe in the Company or the products it had under development.

16   *The October 2006 sales*

17       61.    Shortly after WPP invested $10 million in the Series C Financing Round,

18   in October 2006, Founders Grouf and Waxman again sold shares without disclosure to

19   WPP.  As first revealed in March 2009, in October 2006, Grouf sold 880,761 shares of

20   his Company common stock at $3.69 a share for $3,250,008, and Waxman sold 203,250

21   shares of his Company common stock at $3.69 for $749,993.

22       62.    WPP received no notice of such Founder sales under the ROFR and Co-

23   sale Agreement, and was wholly unaware of these sales, even though WPP had Board

24   observer rights and the right under the ROFR and Co-Sale Agreement to receive notice

25   of any proposed sale by the Founders.

26   *The May 2007 Sales*

27       63.    In the spring of 2007, the Company held another round of common stock

28   financing (the "Common Stock Financing Round").

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

64.     Unbeknownst to WPP, Grouf and Waxman also secretly sold their shares at that time, along with Battery and Index (the "Spring 2007 Sales").  According to admissions made to WPP in March 2009, at the time of the Spring 2007 sale, Grouf sold 525,939 shares of his Company common stock at $4.66 a share for $2,450,876, Waxman sold 123,392 shares of his Company common stock for $575,007, and Battery and Index both sold 525,939 shares of their converted Company stock for $2,450,876 each.

65.     As part of the fraudulent scheme, in May 2007, Defendants caused Spot Runner to misrepresent to WPP that there were no sales of secondary shares occurring.

66.     On May 10, 2007 WPP received a letter (the "May 10 letter") from Spot Runner informing it that the Company had sold shares of common stock to an institutional investor.  The letter further informed WPP that the investor "has expressed a desire to purchase additional shares of common stock.  The Company currently does not need additional capital but has offered to help facilitate sales of common stock by existing stockholders (if possible)."

67.     The May 10 letter further stated that:

> Please note that we are notifying all preferred stockholders and the founders of the Investor's desire to purchase additional shares of common stock.  In order to ensure an orderly and efficient process, we will facilitate by allocating, on a pro rata basis, the Investor's demand among the notified stockholders, who have indicated an interest to sell.  There is no guarantee, however, that the Investor will be willing to purchase any or all of the shares any of the notified stockholders may decide to sell.

68.     The May 10 letter then asked WPP to return a form indicating whether it was interested in selling shares to the investor.

69.     The May 10 letter gave no notice that Grouf, Waxman, Battery or Index sold or were intending to sell shares.

70.     On May 21, 2007, Alexander Barry, counsel to WPP, e-mailed Peter Huie,

VENABLE LLP
2049 CENTURY PARK EAST #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

13

general counsel of Spot Runner, to inquire about the share sale notice in the May 10 letter. Huie was specifically asked:

> "Is there an existing investor and/or founder selling existing shares related to this offering? If so, who is selling shares and how many shares are they selling?"

71.   WPP was assured by reply e-mail from Mr. Huie that same day that

> "[t]his offering does not involve the sale of any existing shares. It is an entirely new issuance by the Company."

72.   Relying on Mr. Huie's representation that no existing Investors or Founders were selling shares, WPP decided to purchase additional shares of Spot Runner stock to maintain its percentage share of the Company's stock.

73.   On or about May 24, 2007, WPP purchased 383,111 shares of common stock from the Company at $4.66 per share for a total investment of $1,785,297 in this round.

74.   Had WPP known the Founders and the Insiders were selling large amounts of their stock, WPP would not have purchased the additional 383,111 shares of stock from the Company in May 2007.

***The January 2008***

75.   In January 2008, without the required notice to WPP, Grouf, Waxman, Battery and Index, along with Director Pittman, again surreptitiously sold substantial quantities of their Spot Runner stock. WPP only recently discovered in March 2009, that the January 2008 sale shares included the following amounts:

| Seller | Number of Shares | Proceeds |
|---|---|---|
| Nick Grouf | 1,126,575 | $6,759,450 |
| David Waxman | 119,109 | $714,654 |
| Battery | 750,853 | $4,505,118 |
| Index | 750,853 | $4,505,118 |

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

234554/v.2

| Robert Pittman | 29,653 | $177,918 |

### The March 2008 Sales

76.     Finally, in March 2008, Grouf, Waxman, Battery and Index, along with Director Pittman again sold Spot Runner shares, in the following amounts:

| Seller | Number of Shares | Proceeds |
|---|---|---|
| Nick Grouf | 1,183,632 | $7,101,792 |
| David Waxman | 125,142 | $750,852 |
| Battery | 788,882 | $4,733,292 |
| Index | 788,882 | $4,733,292 |
| Robert Pittman | 31,155 | $186,930 |

77.     On this occasion, WPP was given notice of the proposed March 2008 secondary share sales by the Founders, the Directors and Battery and Index, and was offered an opportunity to sell shares pro rata with the Founders at that time.  But WPP was given no notice at the time that the same insiders had previously sold almost $40 million in Company stock, or that the financial condition of the Company should have precluded such sales.

78.     Undisclosed to WPP at the time, the proceeds from the sales of Defendants' secondary shares through March 2008 were over $54 million.

79.     The Board had secretly permitted the Founders and the favored Defendant Investors to sell their shares even though the Company would have greatly benefited from additional capital.

80.     The Defendants, as members of the Board and majority Investors, breached their fiduciary duties to the Company by taking this opportunity to raise capital away from the Company so that they could profit from the sales of their own shares.

234554/v.2

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

81.     By January 2008, WPP was becoming increasingly frustrated with the opacity of the Company's management which went against their assurances at the time WPP initially invested that management would operate the Company in a transparent fashion.  WPP had also heard rumors that Insiders had sold off stock and WPP was seeking to obtain additional information about such sales.  All information requests were rebuffed.

82.     In March 2008, WPP was given the opportunity to sell shares only after complaints to the Company that it was not happy with its investment in Spot Runner. Grouf advised that because WPP was unhappy with the Company, he would help place the sale of WPP's shares.  However, Spot Runner only permitted WPP to sell 152,273 of its Company shares in March 2008 for approximately $900,000, while the Defendants took the opportunity to sell almost 2,917,652 of their Company shares in March 2008 for approximately $17.8 million.  They did so without disclosing to WPP that they had just sold another $18 million in Spot Runner common stock in January 2008, or that they had already received almost $40 million as a result of their sales of Company stock in previously undisclosed sales.

83.     To date, Grouf and Waxman have received approximately $30 million from sales of Company stock in breach of their fiduciary duties to the Company, and to WPP as a minority Investor under the ROFR and Co-Sale Agreement.

84.     To date, Battery and Index have received $24 million from sales of Company stock in breach of their fiduciary duty to the Company, and to WPP as a minority Investor.

85.     Although often requested by WPP, Spot Runner has never provided audited financial statements to WPP in its capacity as a Board observer or preferred stockholder.  However, it has recently disclosed that the financial performance of the Company through 2007 and 2008 did not justify the Defendants' extraordinary diversion of opportunity for additional funding for the Company which has recently come to light.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

16

*The March 2009 Admissions*

86.     In March 2009, the Defendants admitted to WPP the extent of their previously undisclosed stock sales, and the financial condition of the Company which should have precluded any such sales.  In addition to disclosing the stock sales listed above, they revealed  for the first time that Spot Runner's operations in 2007 and 2008 resulted in an approximate $35 million loss to the Company for the 2007 fiscal year, and an approximate $45 million loss to the Company for the 2008 fiscal year; that the total Company revenues for each year amounted to  approximately $5 million for the 2007 fiscal year and $9 million for the 2008 fiscal year; and that the Company had expended all but approximately $20 million of its  investor capital, while still losing money at the rate of $35-45 million a year.  Upon information and belief, the Company has raised approximately $100 million from investors to date, and has already expended approximately $80 million of those Investor dollars without completing development of its principal product.  Under the circumstances, the Defendants' diversion of $54 million in available investment funds to their own pockets was wholly unjustifiable, and in blatant breach of their fiduciary duties to the Company and its stockholders.

## COUNT ONE

### Securities Fraud in Violation of Securities Exchange Act Section 10(b)

### and Rule 10b-5 Promulgated Thereunder

### (Against all Defendants)

87.     WPP hereby realleges and incorporates by reference paragraphs 1 through 86 of the Complaint as if fully set forth herein.

88.     The Spring 2007 sale of shares of Spot Runner stock to WPP constituted a sale of securities under Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  The said securities sale took place in and affected interstate commerce.

89.     As alleged in more detail, *supra*, in connection with that securities sale, Defendants engaged in a scheme or artifice to defraud.  Defendants caused Spot Runner

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

17

1  to falsely represent to WPP that neither the Founders nor the existing stockholders of

2  Spot Runner were selling shares of Spot Runner stock in May 2007, when in truth and

3  in fact, they knew that Grouf, Waxman, Battery and Index were selling substantial

4  quantities of Company stock at the time.

5       90.    In purchasing an additional 383,111 shares of Spot Runner stock in May

6  2007, WPP reasonably relied on Defendants' representations that Grouf, Waxman,

7  Battery and Index were not selling their shares of the Company, and WPP would not

8  have acquired the additional Company stock had they known of those sales.

9       91.    By misrepresenting that Grouf, Waxman, Battery and Index were not

10  selling stock, Defendants have engaged in acts of fraud and deceit in the sale of Spot

11  Runner shares to WPP.

12       92.    As a proximate result of Defendants' fraudulent acts, WPP has suffered

13  substantial damages in an amount to be determined at trial, but not less than $1.7

14  million, the purchase price for WPP's purchase of additional shares based on

15  Defendants' misrepresentations.

16  **COUNT TWO**

17  **Violation of California Corporations Code**

18  **Sections 25401 and 25501**

19  **(Against Spot Runner)**

20       93.    WPP hereby realleges and incorporates by reference paragraphs 1 through

21  92 of the Complaint as if fully set forth herein.

22       94.    As alleged in more detail *supra*, Defendant Spot Runner violated Section

23  25401 of California Corporations Code, thereby entitling Plaintiff to recover damages

24  pursuant to Section 25501.

25       95.    As a direct and proximate result of Spot Runner's wrongful conduct, WPP

26  has suffered substantial injuries in an amount to be determined at trial, but not less than

27  $1.7 million.

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

18

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

## COUNT THREE

### Violation of California Corporations Code Section 25504

### (Against the Director Defendants, Huie, Battery and Index)

96.     WPP hereby realleges and incorporates by reference paragraphs 1 through 95 of the Complaint as if fully set forth herein.

97.     The Director Defendants, Huie, Battery and Index acted as controlling persons of the Company within the meaning of section 25504 of the California Corporations Code.

98.     By reason of such wrongful conduct violative of California Corporations Code section 25401, the Directors, Huie, Battery and Index are liable pursuant to section 25504 of the California Corporations Code.

99.     As a direct and proximate result of their wrongful conduct, WPP has suffered substantial injuries in an amount to be determined at trial, but not less than $1.7 million.

## COUNT FOUR

### Violation of California Corporations Code Section 25504.1

### (Against the Director Defendants, Huie, Battery and Index)

100.   WPP hereby realleges and incorporates by reference paragraphs 1 through 99 of the Complaint as if fully set forth herein.

101.   The Director Defendants, Huie, Battery and Index materially assisted Spot Runner in violating section 25401 of the California Corporations Code.

102.   By reason of their wrongful conduct, the Directors, Huie, Battery and Index are jointly and severally liable pursuant to section 25504.1 of the California Corporations Code.

103.   As a direct and proximate result of their wrongful conduct, WPP has suffered substantial injuries in an amount to be determined at trial, but not less than $1.7 million.

1

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

## COUNT FIVE

### Breach of Fiduciary Duty to Spot Runner

### (Derivative Suit Against All Defendants)

104.   As a derivative claim brought on behalf of the Company, Spot Runner, Inc., WPP hereby realleges and incorporates by reference paragraphs 1 through 103 of the Complaint as if fully set forth herein.

105.   As directors and majority stockholders of Spot Runner, Defendants are fiduciaries toward Spot Runner and its stockholders and owe to them the duty of faithfully, loyally, diligently, prudently, honestly, and carefully conducting Spot Runner's business.  As fiduciaries, they are bound to act toward and deal with Spot Runner and its other stockholders with the utmost fidelity, loyalty, care and good faith.

106.   Defendants have violated their fiduciary duty by usurping from Spot Runner the opportunity to sell shares of its stocks to new investors and instead taking those opportunities for themselves.

107.   Defendants have done so for self-serving, improper and bad-faith reasons, namely, a desire to profit from the sales of their secondary shares.  There is no legitimate business justification for the Director Defendants' actions.  Defendants have acted willfully, wantonly and with reckless disregard for the well-being of Spot Runner.

108.   As a result of the Defendants' actions, Spot Runner has been deprived of significant amounts of capital and is moving swiftly toward insolvency.

109.   To remedy the Defendants' breach of fiduciary duties to Spot Runner, the Company is entitled to the imposition of a constructive trust on the proceeds of all of the secondary sales concluded by the defendant in violation of their fiduciary obligations to the Company.

## COUNT SIX

### Breach of Fiduciary Duty to WPP

### (Against All Defendants)

110.   WPP hereby realleges and incorporates by reference paragraphs 1 through

20

1   109 of the Complaint as if fully set forth herein.

2       111.   As directors and majority stockholders of Spot Runner, Defendants are

3   fiduciaries toward Spot Runner and its stockholders and owe to them the duty of

4   faithfully, loyally, diligently, prudently, honestly, and carefully conducting Spot

5   Runner's business.  As fiduciaries, they are bound to act toward and deal with Spot

6   Runner and its other stockholders with the utmost fidelity, loyalty, care and good faith.

7       112.   The Defendants have also violated their fiduciary duty to WPP by waiving

8   the rights of the Investors of the Company, including WPP, under the ROFR and Co-

9   Sale Agreement.

10      113.   The Defendants have done so for self-serving, improper and bad-faith

11  reasons, namely, a desire to profit from the sales of their secondary shares of the

12  Company to new investors.  There is no legitimate business justification for the

13  Defendants' actions.  The Defendants have acted willfully, wantonly and with reckless

14  disregard for the interests of WPP as a minority Investor.

15      114.   As a result of the Defendants' actions, WPP has been damaged in an

16  amount to be determined at trial, but no less than $11.5 million.

17                          **COUNT SEVEN**

18          **Constructive Trust [California Civil Code Section 2224]**

19                      **(Against All Defendants)**

20      115.   WPP hereby realleges and incorporates by reference paragraphs 1 through

21  114 of the Complaint as if fully set forth herein.

22      116.   Defendants' sales of their shares of Spot Runner stock was a corporate

23  opportunity belonging to the Company.

24      117.   Defendants violated their fiduciary duties to the Company by

25  misappropriating those opportunities for themselves.

26      118.   As a consequence of the Defendants' actions, pursuant to California Civil

27  Code Section 2224, the Court should impose a constructive trust in favor of Spot

28  Runner and its stockholders on all funds received by Defendants from their sales of

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

21

shares of Spot Runner stock.

## COUNT EIGHT

### Breach of Contract

### (Against Grouf, Waxman, Battery and Index)

119.   WPP incorporates by reference paragraphs 1 through 118 of the Complaint as if fully set forth herein.

120.   The ROFR and Co-Sale Agreement is a binding and valid contract between Grouf, Waxman, Spot Runner and the investors in Spot Runner, including WPP.

121.   WPP has fulfilled all of its obligations under his Agreement.

122.   Defendants have violated and breached the Agreement, by, among other things, (i) failing to provide proper notice to WPP of proposed sales by the Founders pursuant to Section 1.2 of the ROFR and  Co-Sale Agreement; (ii) failing to permit WPP to exercise its rights of first refusal or co-sale pursuant to the ROFR and  Co-Sale Agreement; and (iii) purporting to waive all of WPP's rights under the ROFR and  Co-Sale Agreement and failing to provide notice to WPP of the waiver.

123.   By virtue of the breaches of the ROFR and  Co-Sale Agreement, WPP has been damaged in an amount to be determined at the time of trial, but no less than $11.5 million.

## COUNT NINE

### (Breach of Contract)

### (Against the Director Defendants)

124.   WPP incorporates by reference paragraphs 1 through 123 of the Complaint as if fully set forth herein.

125.   The Board Observer Rights Agreement is a binding and valid contract between Spot Runner and WPP.

126.   WPP has fulfilled all of its obligations under this Agreement.

127.   Director Defendants have violated and breached the Agreement, by, among other things, failing to provide WPP with all information and documents provided to the

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

22

1  Board.

2      128.   By virtue of the breaches of the Agreement, WPP has been damaged in an

3  amount to be determined at the time of trial, but no less than $11.5 million.

4

5      WHEREFORE, Plaintiff WPP Luxembourg Gamma Three Sarl requests

6  judgment as follows:

7      A.     On Counts One through Four, awarding WPP damages in an amount to be

8  determined at trial, but no less than $1.7 million;

9      B.     On Counts Five and Seven, imposing a constructive trust on all proceeds

10  from Defendants' sales of their shares of Spot Runner stock;

11      C.     On Counts Six, Eight and Nine, awarding WPP damages in an amount to

12  be determined at trial, but no less than $11.5 million;

13      D.     Awarding attorneys' fees to the extent authorized by contract or statute;

14  and

15      E.     Granting such other and further relief as the Court deems just and proper,

16  together with the costs and disbursements of this action.

17

18  Dated:  April 9, 2009

19

20                          DAVIS & GILBERT LLP
                            PAUL F. CORCORAN

21

22                          VENABLE LLP
                            BEN D. WHITWELL

23                          JEFFREY M. TANZER

24

25                  By _____

26                     Jeffrey M. Tanzer

27                     Attorneys for Plaintiff

28

234554/v.2

1

## DEMAND FOR JURY TRIAL

2          Plaintiff WPP Luxembourg Gamma Three Sarl demands a trial by jury as to all

3    issues so triable.

4

5    Dated:  April 9, 2009

6

7                                          DAVIS & GILBERT LLP
                                           PAUL F. CORCORAN

8

9                                          VENABLE LLP
                                           BEN D. WHITWELL

10                                         JEFFREY M. TANZER

11

12                                    By

13                                         Jeffrey M. Tanzer
                                           Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

234554/v.2

COMPLAINT

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900