DAVIS & GILBERT LLP
PAUL F. CORCORAN (Admitted *Pro hac vice*)
PCorcoran@dglaw.com
1740 Broadway
New York, NY 10019
Telephone: (212) 468-4800
Facsimile: (212) 468-4888

VENABLE LLP
BEN D. WHITWELL (Cal. Bar No. 138426)
bwhitwell@venable.com
2049 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Plaintiff

CONFORMING
COPY

FILED
CLERK, U.S. DISTRICT COURT

MAY – 4 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WPP LUXEMBOURG GAMMA THREE SARL, on its own behalf and derivatively on behalf of SPOT RUNNER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NICK GROUF, DAVID WAXMAN, DANNY RIMER, ROGER LEE, ROBERT PITTMAN, BATTERY VENTURES VI, L.P., BATTERY INVESTMENT PARTNERS VI, LLC, BATTERY VENTURES VII, L.P., BATTERY INVESTMENT PARTNERS VII, LLC, INDEX VENTURES III (JERSEY) L.P., INDEX VENTURES III (DELAWARE) L.P., INDEX VENTURES III PARALLEL ENTREPRENEUR FUND (JERSEY) L.P., | Case No. CV 09-2487 DMG (PLAx)<br><br>**VERIFIED SECOND AMENDED COMPLAINT FOR SECURITIES FRAUD, COMMON LAW FRAUD, BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING BREACH OF FIDUCIARY DUTY, AND BREACH OF CONTRACT**<br><br>[Filed with leave of Court]<br><br><br>**DEMAND FOR JURY TRIAL** |

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

Defendants,

and

SPOT RUNNER, INC.,

Nominal Defendant.

Plaintiff WPP Luxembourg Gamma Three Sarl ("WPP" or "Plaintiff") on its own behalf and derivatively on behalf of Spot Runner Inc. (the "Company" or "Spot Runner"), by its attorneys, Davis & Gilbert LLP and Venable LLP, for its Second Amended Complaint (the "Complaint") against defendants Nick Grouf ("Grouf"), David Waxman ("Waxman") (Grouf and Waxman together the "Founders"), Danny Rimer ("Rimer"), Roger Lee ("Lee"), Robert Pittman ("Pittman") (Grouf, Waxman, Rimer, Lee and Pittman together the "Directors"), Battery Ventures VI, L.P., Battery Investment Partners VI, LLC, Battery Ventures VII, L.P., Battery Investment Partners VII, LLC (the Battery entities together "Battery"), Index Ventures III (Jersey) L.P., Index Ventures III (Delaware) L.P., Index Ventures III Parallel Entrepreneur Fund (Jersey) L.P. (the Index entities together "Index") (all defendants collectively "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.     This action arises from WPP's investment in a privately held start-up media company, Spot Runner.  Defendants are the Founders and other venture capitalist insiders of Spot Runner.  The Founders of the Company, Defendants Grouf and Waxman, convinced WPP to invest in Spot Runner based on representations that the Founders were going to develop this start-up operation into a successful and profitable venture.

2.     As Spot Runner was a private start-up company that did not yet have a revenue stream, private investment capital was the lifeblood of the Company.  Taking

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

2

1  advantage of opportunities to raise capital was thus essential to the Company's

2  viability.

3       3.    For purposes of WPP's investment, of critical importance to WPP was the

4  fact that the Founders had personal stakes in Spot Runner so their interests and

5  incentives were aligned with the success of the Company.  Therefore, in the context of

6  this privately held, venture-capital-funded start-up operation, information about the

7  Founders of the Company selling off their own stock, and thus reducing their own

8  personal stake and investment risk in the Company, was of paramount importance to

9  WPP.  Indeed, it was among the most important pieces of information about the

10  Company.

11       4.    WPP protected its investment with contractual arrangements that would

12  provide WPP with information about any sales of stock by the Founders in secondary

13  markets.

14       5.    There were two principal contractual arrangements pertinent to this issue.

15  First, WPP entered into the Second Amended and Restated Rights of First Refusal and

16  Co-Sale Agreement (the "ROFR and Co-Sale Agreement"), which provided, among

17  other things, that before selling any shares of their Spot Runner stock, the Founders

18  were obligated to provide written notice to the Company's investors, including WPP.

19  Another key provision in that Agreement provided that the Company was to be given a

20  right of first refusal with respect to any such sales of stock by the Founders.

21       6.    Second, WPP entered into a Board Observer Rights Agreement, which

22  provided that WPP would have a representative observe Spot Runner Board meetings

23  and receive the information provided to the Board of Directors.  Due to the Company's

24  right of first refusal provided for by the above-mentioned ROFR and Co-Sale

25  Agreement, the Board Observer Rights Agreement gave WPP a second means of

26  receiving notice of any attempted stock sales by the Founders, since any decision to

27  exercise or waive the Company's rights of first refusal with respect to such Founder

28  share sales would have to be discussed at Board meetings in the regular course of

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VERIFIED SECOND AMENDED COMPLAINT

1  business.

2      7.     This case is about Defendants' elaborate scheme to line their own pockets

3  by secretly selling off tens of millions of dollars of their own Spot Runner shares, thus

4  diverting needed capital from the Company and usurping corporate opportunities to

5  raise capital that the Company needed.  In order to promote Spot Runner stock so they

6  could sell their own shares for profit at ever-increasing valuations, the Defendants

7  needed WPP as an investor both for WPP's financial support and its international

8  reputation in the media industry.  Therefore, as an integral part of Defendants'

9  fraudulent scheme, the Defendants committed repeated intentional acts of concealment

10  and material omissions, all designed to circumvent the above-mentioned contractual

11  arrangements and to mislead WPP into believing that the Founders were not selling

12  their stock.

13      8.     As a result of Defendants' fraudulent conduct, WPP remained in the dark

14  about the fact that the Founders, often joined by other insider Defendants acting in

15  concert with them, were in fact secretly selling off millions of dollars of their own Spot

16  Runner shares, significantly reducing their own personal stakes in the Company and

17  diverting needed investment capital away from the Company coffers.  The Defendants

18  benefited from this scheme by participating in the Founders' stock sales, thus enriching

19  themselves at the expense of WPP as well as the Company itself.

20      9.     As a result of Defendants' fraudulent conduct, WPP was induced into

21  purchasing additional Spot Runner shares and it has lost the value of its investment as a

22  direct result of Defendants' fraudulent conduct.

23      10.    The Defendants have violated their fiduciary duties to Spot Runner by

24  diverting millions of dollars of needed investment capital away from the Company and

25  into their own pockets.  The Company has been damaged as a result.

26      11.    WPP brings this action individually on its own behalf and also as a

27  derivative action within the meaning of Rule 23.1 of the Federal Rules of Civil

28  Procedure on behalf of Spot Runner to enforce the rights of the Company.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

4

12.     With regard to the derivative claims, WPP has not made demand on the Company for the actions requested in the Complaint because demand would be futile. None of the directors of the Company are disinterested and independent because all have engaged in self-dealing in connection with this matter, as alleged below.

13.     This action brings claims for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder; common law fraud; breach of fiduciary duty to Spot Runner; aiding and abetting breach of fiduciary duty to Spot Runner; breach of fiduciary duty to WPP as minority stockholder; and breach of the Right of First Refusal and Co-Sale Agreement.

## THE PARTIES

14.     Plaintiff WPP is a Luxembourg corporation, which maintains its principal place of business at Rue Heine, 6, L1720 Luxembourg, Luxembourg.  WPP is a subsidiary of WPP Plc, a global communications agency with partner companies specializing in all areas of communications, including advertising, direct marketing, and public relations.  WPP Plc's direct and indirect subsidiaries and partner companies together constitute the largest media buyer in the world.

15.     Spot Runner is a Delaware corporation which maintains its principal place of business at 6300 Wilshire Boulevard, 21st Floor, Los Angeles, CA 90048.  Spot Runner is a start-up media buying corporation which was purportedly developing an innovative internet platform (called Project Malibu) to allow small businesses to purchase cable and broadcast TV advertising services online.

16.     Upon information and belief, Defendant Nick Grouf is a resident of California.  Grouf is a founder of Spot Runner, its current Chief Executive Officer (CEO) and Chairman of the Board of Directors.  Grouf was CEO and Chairman of the Board of Directors at all times relevant to this action.

17.     Upon information and belief, Defendant David Waxman is a resident of California.  Waxman is a founder of Spot Runner.  Waxman was Spot Runner's Chief

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VERIFIED SECOND AMENDED COMPLAINT

Technology Officer (CTO) and a member of its Board of Directors at all times relevant
to this action.

18.     Upon information and belief, Defendant Danny Rimer is a resident of the
United Kingdom and a General Partner of Index.  Rimer is a member of Spot Runner's
Board of Directors.  Rimer was a director of the Company at all times relevant to this
action.

19.     Upon information and belief, Defendant Roger Lee is a resident of
California and a General Partner of Battery.  Lee is a member of Spot Runner's Board
of Directors.  Lee was a director of the Company at all times relevant to this action.

20.     Upon information and belief, Defendant Robert Pittman is a resident of
New York.  Pittman was a member of Spot Runner's Board of Directors at all times
relevant to this action.

21.     Upon information and belief, Defendant Battery Ventures VI, L.P. is a
limited partnership with its principal place of business at 2884 Sand Hill Road, Suite
101, Menlo Park, CA 94025.

22.     Upon information and belief, Defendant Battery Investment Partners VI,
LLC, is a Delaware corporation with its principal place of business at 2884 Sand Hill
Road, Suite 101, Menlo Park, CA 94025.

23.     Upon information and belief, Defendant Battery Ventures VII, L.P. is a
partnership with its principal place of business at 2884 Sand Hill Road, Suite 101,
Menlo Park, CA 94025.

24.     Upon information and belief, Defendant Battery Investment Partners VII,
LLC is a Delaware corporation with its principal place of business at 2884 Sand Hill
Road, Suite 101, Menlo Park, CA 94025.

25.     Upon information and belief, Defendant Index Ventures III (Jersey) L.P. is
a partnership with its principal place of business at No. 1 Seaton Place, St. Helier,
Jersey JE4 8Y J, Channel Islands, England.

26.     Upon information and belief, Defendant Index Ventures III (Delaware)

VERIFIED SECOND AMENDED COMPLAINT

L.P. is a limited partnership with its principal place of business at No. 1 Seaton Place, St. Helier, Jersey JE4 8Y J, Channel Islands, England.

27.     Upon information and belief, Defendant Index Ventures III Parallel Entrepreneur Fund (Jersey) L.P. is a limited partnership with its principal place of business at No. 1 Seaton Place, St. Helier, Jersey JE4 8Y J, Channel Islands, England.

## DEFENDANTS' CO-CONSPIRATOR

28.     Defendants' co-conspirator was Peter Huie ("Huie").

29.     Upon information and belief, Huie is a resident of California.  Huie is General Counsel to Spot Runner.  Huie was General Counsel to the Company at all times relevant to this action.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction under the securities laws of the United States, 15 § U.S.C. 78aa, and under the Judicial Code of the United States, 28 U.S.C. § 1331. This Court has supplemental jurisdiction over WPP's state law claims under 28 U.S.C. § 1367(a).

31.     Venue is appropriate in the Central District of California under 28 U.S.C. §§ 1391(b) and 1401 because a substantial part of the events and omissions giving rise to the claims occurred there, and because the May 2007 Stock Purchase Agreement fixes the federal or state courts of the County of Los Angeles, California as the venue for lawsuits arising out of the Agreement, and under 15 U.S.C. § 78aa because some of the Defendants are found in and/or transact business in this District.

32.     This individual and derivative action is not a collusive one to confer jurisdiction on a Court of the United States which it would not otherwise have.

## FACTS COMMON TO ALL CLAIMS

33.     Spot Runner was founded in 2004 by Adam Shaw ("Shaw"), Grouf and Waxman.  It is a "start-up" company which was reliant, at all relevant times, on investments of venture capital funds to meet its operating and development expenses, and has yet to make a profit from the sale of products or services.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

7

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

34.     Spot Runner's purported main product, which was still in development, was an internet media-buying platform called Project Malibu, which it promoted as an innovative way for small businesses to purchase cable and broadcast TV advertising services online.  Upon information and belief, Project Malibu was never completed, and was ultimately sold off for a nominal amount.

35.     Upon information and belief, before seeking any private financing of the Company, Grouf, Waxman and Shaw awarded themselves approximately 31 million, 3.5 million and 435,000 shares of the Company, respectively, with little or no investment of cash.

36.     Battery and Index are the holders of Series A and Series B preferred stock of Spot Runner, having acquired approximately 14.8 million and 14.7 million shares respectively in early 2006 for a cash investment of approximately $6 million each.

37.     Battery and Index's ownership of Series A and B preferred stock make them the majority preferred stockholders in the Company. When acting together, they, as a group, hold the majority of the voting shares in the Company.

38.     Pursuant to Battery and Index's investment in the Company, Spot Runner agreed with Battery and Index that each would have the right to appoint one member of Spot Runner's Board of Directors.

39.     Index appointed Rimer, a General Partner of Index, as its representative on Spot Runner's Board of Directors.

40.     Battery appointed Lee, a General Partner of Battery, as its representative on Spot Runner's Board of Directors.

41.     At all relevant times, the Board of Directors of the Company (the "Board") consisted of five members: Grouf, Waxman, Rimer sitting as the Index representative, Lee sitting as the Battery representative, and Robert Pittman (the "Directors" or "Director Defendants").

42.     Upon information and belief, Waxman and Pittman have resigned from the Board subsequent to the filing of this action, such that the Board consists of Grouf,

8

1   Rimer and Lee as of the filing of this Second Amended Complaint.

2   ***WPP's investment in Spot Runner***

3      43.   In August 2006, Spot Runner sought additional capital and held another

4   round of financing ("the Series C Financing Round").  WPP invested in Spot Runner in

5   this round on or around August 29, 2006.

6      44.   WPP purchased 2,710,027 shares of Spot Runner Series C preferred stock

7   at $3.69 per share for a total investment of approximately $10 million.  At the time, this

8   investment gave WPP approximately 62 percent of the class of Series C preferred stock,

9   or about 4 percent of the outstanding stock of Spot Runner on a fully diluted basis.

10     45.   WPP's August 2006 purchase of $10 Million in Series C preferred stock

11  made it the largest single investor in Spot Runner at the time.

12     46.   To protect its investment, WPP negotiated with Spot Runner for "Board

13  Observer Rights," in which WPP would have the opportunity to attend all of Spot

14  Runner's Board meetings and be provided any information that the Board members

15  received.

16     47.   WPP and Spot Runner entered into a letter agreement (the "Board

17  Observer Rights Agreement") on or about August 29, 2006.

18     48.   The Board Observer Rights Agreement provides that:

19           The Company and WPP will mutually agree (which
20           agreement shall not be unreasonably withheld or delayed by
             the Company) upon a WPP representative (the "Observer")
21           who shall be entitled to attend all meetings of the Company's
             Board of Directors (the "Board") in a non-voting, observer
22           capacity.

23

24     49.   It further provides that:

25           The Company shall provide to the Observer, concurrently
             with the members of the Board, and in the same manner,
26           notice of each meeting of the Board and a copy of all
             materials provided to the members of the Board….

27

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

9

50. It further provides that:

> WPP agrees that it will hold in confidence all Confidential Information . . . of the Company provided to it or learned by it in connection with its rights under this agreement and use such information solely to assist in the strategic relationship between the Company and WPP.

51. As a condition to WPP's investment of $10 million in Spot Runner, WPP along with the other holders of the Series A, Series B and Series C preferred stock (the "Investors"), in August 2006, also entered into the Second Amended and Restated Rights of First Refusal and Co-Sale Agreement (the "ROFR and Co-Sale Agreement") with the Company and the Founders.

52. The ROFR and Co-Sale Agreement provides that before any shares of Spot Runner common stock could be sold or otherwise transferred by a Founder, "the Company shall have a right of first refusal (the 'Right of First Refusal') to purchase such shares (the 'Offered Securities')..." (§ 1.1) ("Company's Right of First Refusal").

53. The ROFR and Co-Sale Agreement further provides that if the Company does not exercise its rights of first refusal, then each Investor (also defined in the Agreement as it is herein to mean the "purchasers of the Company's preferred stock")

> shall have the right, upon notice to the Founder at any time within forty (40) days after receipt of the Transfer Notice (the "Purchase Right Period") to purchase its Pro Rata Share of all, or such lesser amount as desired, of such Offered Securities not purchased by the Company or Nick Grouf at the Offered Price and upon the same terms (or terms as similar as reasonably possible) upon which the Founder is proposing or is to dispose of such Offered Securities (the "Purchase Right"), and the Founder shall sell such Offered Securities to the Investors pursuant to such terms.

> (§ 1.7) ("Investors' Purchase Right")

54. The ROFR and Co-Sale Agreement also provides that if the right of first refusal is not exercised, "each Investor...shall have the right to participate in any sale to

10

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

a Proposed Transferee upon the same terms and conditions as set forth in the Transfer Notice…" (§ 2.1, "Right to Participate")

55.   The ROFR and Co-Sale Agreement thus provides that each Investor could sell their shares in the Company pro-rata with any disposition of common stock by the Founders.

56.   The ROFR and Co-Sale Agreement provides that the Founders were required to notify the Company and the Investors of any potential sale of stock by the Founders.  Specifically, the Agreement provides that

> ***Before the transfer of any Offered Securities, the Founder shall deliver to the Company… and the Investors a written notice*** (the "Transfer Notice") stating: (i) the Founder's bona fide intention to sell or otherwise transfer such Offered Securities; (ii) the name of each proposed purchaser or other transferee (a "Proposed Transferee"); (iii) the number of Offered Securities to be transferred to each Proposed Transferee; and (iv) the bona fide cash price or other consideration for which the Founder proposes to transfer the Offered Securities (the "Offered Price").  The Founder shall offer the Offered Securities at the Offered Price first to the Company, next to Nick Grouf (if the Founder is Adam Shaw or David Waxman and if Nick Grouf is then an employee of the Company, the Chairman of the Board of Directors or a member of the Board of Directors) and finally to the Investors.

> (§ 1.2) ("Investors' Notice Rights") (emphasis added)

57.   The ROFR and Co-Sale Agreement further provides that the Agreement can only be amended or waived

> by written instrument signed by the party against whom enforcement of any such amendment, waiver, or discharge or termination is sought,

but then contains a *proviso* that

11

VERIFIED SECOND AMENDED COMPLAINT

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

the holders of sixty percent (60%) of the Shares held by the
Investors voting together may waive, discharge, terminate,
modify or amend, on behalf of all Investors, any provisions
hereof….

(§ 3.9) ("Amendments or Waivers")

58.     The ROFR and Co-Sale Agreement further provides that "[a]ny sale,
assignment or other transfer of Offered Securities by a Founder contrary to the
provisions of this Agreement shall be null and void…unless and until the Founder has
satisfied the requirements of this Agreement with respect to such sale".  (§ 3.1, "Invalid
Transfers")  This provision further provides that

**The Founder shall provide the Company and each Investor**
**with written evidence that such requirements have been met**
**or waived prior to consummating any sale, assignment or**
**other transfer of Securities**, and no Securities shall be
transferred on the books of the Company until such written
evidence has been received by the Company and each
Investor.

(§ 3.1) ("Invalid Transfers") (emphasis added).

59.     Thus, one of the principal "requirements" imposed by the Agreement on
sales of stock by the Founders is the duty to provide notice of such stock sales to the
Investors under § 1.2.  If any waiver of that notice requirement were to occur pursuant
to § 3.9, then § 3.1 imposes upon the Founders an obligation to provide the Investors
with written notice of any such waiver.

60.     Read together, the ROFR and Co-Sale Agreement and the Board Observer
Rights Agreement insured that WPP would have notice of any attempt by the Founders
to reduce their interests, incentives or risks by selling off their shares in the Company.

***The Defendants' Fraudulent Scheme***

61.     From at least 2006, the Defendants operated the Company for their own

12

benefit instead of the best interests of the Company and its stockholders.  They

participated in a "pump-and-dump" scheme in which they aggressively promoted the

Company to new investors and then sold new investors large quantities of their own

secondary shares at ever-increasing valuations.  Such secondary sales were

accomplished surreptitiously and without the disclosures to Investors required by the

controlling Investor agreements or the securities laws.

62.     The Defendants' surreptitious stock sales diverted tens of millions of

dollars away from the Company and into the pockets of the individual Defendants at a

time when the Company was entirely reliant on private investment capital to survive,

and when it was losing thirty to forty million dollars per year and quickly dissipating

the capital that had been raised.

63.     An integral part of the "pumping" of the Company's stock by the

Defendants, which allowed them to sell their own shares for handsome profits, was the

Defendants' promotion of WPP as an investor in and supporter of the Company.  On the

Company website and elsewhere, the Defendants advertised the investment and support

of "WPP", the Plaintiff's parent company, a world-renowned communications company

and the largest media buyer in the world, to create the appearance of credibility for this

start-up operation.

64.     In the context of this privately held, venture-capital-funded start-up

operation, information about the Founders of the Company selling off their own shares

and reducing their personal stake and investment risk rather than investing in the long-

term success of the Company, was a critically important piece of information to an

investor such as WPP – among the most important pieces of information about the

Company.

65.     Because Defendants relied on WPP's reputation in the industry and needed

WPP's continued support, in order to promote the Company and sell their stock for

profit at increasing valuations, it was vital to the Defendants' scheme that their stock

sales be concealed from WPP.  Had WPP learned that the Defendants – and in

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

13

particular the Founders – were selling their stock in large quantities, WPP would have ceased investing in or continuing to support the Company.  Among other things, such information would have alerted WPP to the pump-and-dump scheme and to the fact that the Founders were reducing their personal stake in the Company, and were using the Company as a vehicle to make short-term profits.

66.    Between February 2006 and March 2008, Defendants engaged in a scheme or artifice to defraud WPP and other investors in the Company by surreptitiously diverting millions of dollars in available funds from the Company coffers by selling off substantial quantities of their personal stockholdings in the Company, in violation of: (a) their fiduciary duties to the Company, (b) their Agreements with the Investors, and (c) applicable securities laws.

67.    One of the objectives of Defendants' scheme was to deceive WPP into continuing to invest in and support the Company, which WPP would not have done had it known that the Founders of the Company and other Defendants were selling off their shares in large quantities.

68.    As a part of said scheme, the Defendants, acting out of self interest, and in total disregard of their fiduciary obligations to the Company and the Investors, conspired and agreed together to purport to waive the rights of the Company and WPP under the ROFR and Co-Sale Agreement and to withhold any mention of the Founders' stock sales from Company Board meetings, in order to conceal such activity from WPP.

69.    All of the Defendants played a direct and primary role in the scheme to defraud WPP.

70.    The Founders of the Company – Defendants Grouf and Waxman – participated in the scheme by surreptitiously selling off millions of dollars of their own stock without disclosing the sales to WPP.  Grouf and Waxman knew that their sales would be highly material to WPP, and so Grouf and Waxman deliberately concealed the sales from WPP so that WPP would continue to invest in and support the Company.  Grouf and Waxman's deliberate failure to disclose their stock sales was a violation of

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

14

1    their duties under § 1.2 of the ROFR and Co-Sale Agreement.

2        71.    Grouf and Waxman also participated in the scheme by failing to provide

3    written notice to WPP that the requirements of the ROFR and Co-Sale Agreement had

4    been met or waived with respect to their stock sales, despite the fact that § 3.1 of the

5    ROFR and Co-Sale Agreement imposes upon the Founders an obligation to provide

6    such written notice.  Grouf and Waxman deliberately failed to provide such notice

7    because such notice would have alerted WPP to the fact that the Founders were selling

8    their stock, and it was essential to the pump-and-dump scheme that WPP not know

9    about the Founders' sales.

10       72.    Defendants Battery and Index participated in the scheme by conspiring

11   with Grouf and Waxman to purport to waive WPP's rights to receive notice of certain

12   stock sales by Grouf and Waxman pursuant to the ROFR and Co-Sale Agreement.  In

13   return for being permitted to participate in certain stock sales and thus sell off millions

14   of dollars of their own stock, Battery and Index, functioning as a combined 60%

15   majority preferred shareholder, purported to waive WPP's rights to receive notice of

16   Founders' stock sales.

17       73.    Battery and Index's purported waiver of WPP's notice rights did not

18   actually relieve Grouf and Waxman of their duties to disclose because it did not meet

19   the requirements of the ROFR and Co-Sale Agreement and was done in bad faith.

20       74.    The Director Defendants Lee, Rimer, and Pittman, as well as Grouf and

21   Waxman themselves, participated in the scheme by intentionally withholding any

22   mention of the Founders' stock sales from Board of Directors meetings, as follows:

23       75.    Pursuant to the ROFR and Co-Sale Agreement § 1.1, in order for the

24   Founders to sell stock the Company must first be given a right of first refusal.  The

25   Company's decision to exercise or decline its right of first refusal requires Board action.

26   In the ordinary course of business, such Company decisions would be considered and

27   discussed at a Board meeting.   As a Board Observer pursuant to the Board Observer

28   Rights Agreement, WPP would be privy to such discussions and thus would receive

15

1   notice of any proposed sale of the Founders' stock.

2       76.    The Director Defendants Lee, Rimer, Pittman, Grouf and Waxman

3   deliberately withheld from Board meetings any mention of the Founders' stock sales or

4   the waiver of the Company's right of first refusal. This is evident from the fact that on

5   each occasion when the Founders sold shares without notice to WPP, such sales

6   occurred without any Board meeting consideration of the Company's exercise of its

7   first refusal rights. The Director Defendants so acted for the purpose of depriving WPP

8   of its rights under the Board Observer Rights Agreement and concealing from WPP the

9   existence and magnitude of the sales of stock by the Founders – so that WPP would

10   continue investing in and supporting the Company which was integral to Defendants'

11   pump-and-dump scheme.

12       77.    Lee, Rimer, and Pittman, like Grouf and Waxman, engaged in the scheme

13   for personal benefit. As detailed below, Battery – of which Lee is a General Partner –

14   and Index – of which Rimer is a General Partner – participated in surreptitious stock

15   sales with the Founders, simultaneously selling off millions of dollars of Battery and

16   Index's Spot Runner stock. Pittman similarly participated by selling personal Company

17   stock in January 2008.

18       78.    Huie participated in the fraudulent scheme as follows:

19       79.    In Spring 2007, Spot Runner offered WPP the opportunity to purchase

20   additional Spot Runner shares pursuant to a new issuance by the Company, and also

21   offered WPP a possible opportunity to sell its shares to an institutional investor in the

22   secondary market.

23       80.    In considering the purchase of additional Company stock pursuant to the

24   new issuance, and given the great significance to WPP of any stock sales by the

25   Founders or other investors, WPP sent an email to Huie, as General Counsel of Spot

26   Runner, asking whether any Founder or other investor was selling their stock to the

27   institutional investor. As alleged in detail below, Huie's email response on behalf of

28   Spot Runner – that "[t]his offering does not involve the sale of any existing shares…" –

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

16

was materially misleading in that it omitted the material fact that the Founders Grouf
and Waxman, as well as investors Battery and Index, were in fact selling shares in large
quantities. Huie thus participated in the scheme by deliberately deceiving WPP through
his materially misleading response, and by his material omissions in responding to
WPP's direct inquiry about Founders' and Investor sales.

81.     As alleged in detail below, Defendants again surreptitiously sold millions
of dollars of shares in January 2008.

82.     WPP never received prior notice of any of these secondary sales of
Company stock by Defendants, either in its capacity as a Board Observer, as a Preferred
Stockholder, or as a party to the ROFR and Co-Sale Agreement.

83.     In sum, all of the Defendants participated directly in the scheme and
committed acts and omissions with the intent and effect of concealing material
information, deceiving WPP into believing that the Founders were not selling their
shares, and causing WPP to further invest in and support the Company.

84.     In addition to defrauding WPP, Defendants breached their fiduciary duties
to the Company. The millions of dollars of available investment funds that the
Defendants diverted to themselves or their respective investment funds through their
surreptitious secondary stock sales were needed by the Company to fund ongoing
operations and development efforts. The Defendants' decisions to line their own
pockets rather than bring in needed capital to the Company amounted to self-dealing in
violation of their fiduciary duties to the Company and its other investors.

85.     Pursuant to Defendants' fraudulent scheme, the Defendants improperly
sold more than $54 million of common shares of the Company in violation of the rights
of the Company and the Investors, and at a time when the Company remained a start-up
operation in need of investment capital.

### Chronology of Stock Sales and Related Communications
### Defendants' Spring 2006 sales

86.     In early 2006, before WPP invested in the Company, the Founders sold off

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

17

millions of dollars of their common shares.  In or around February and March 2006,
Grouf sold approximately 4.7 million shares at $1.64 per share for proceeds of
approximately $7.2 million.  Waxman also sold 527,249 shares for $811,963 and Shaw
sold 277,498 shares for $427,347.

87.    Significantly, WPP was not informed that the Founders had sold these
shares when it invested in Spot Runner in the Series C Financing Round in August
2006.  Had WPP known of the Founders' sales, WPP would have reconsidered its
investment in the Company.  The Founders' sales of their own shares would have been
material to WPP because such sales were wholly at odds with the venture capital
fundraising being done for a start-up company, reduced the Founders' personal stake
and investment risk in the Company's success, and suggested that the Founders did not
believe in the Company or the products it had under development.

### Defendants' October 2006 Sales

88.    Shortly after WPP invested $10 million in the Series C Financing Round
and entered into the ROFR and Co-Sale Agreement, in October 2006, Founders Grouf
and Waxman again sold shares without disclosure to WPP.  Unbeknownst to WPP,
Grouf sold 880,761 shares of his Company common stock at $3.69 a share for
$3,250,008, and Waxman sold 203,250 shares of his Company common stock at $3.69
for $749,993 (the "October 2006 Sales").

89.    The Founders intentionally failed to provide notice to WPP of these stock
sales despite the duty imposed on the Founders to provide such notice pursuant to the
ROFR and Co-Sale Agreement § 1.2.

90.    There was no legally effective waiver of WPP's rights that would relieve
the Founders of this duty of disclosure.

91.    The Founders did not provide notice to WPP that the requirements of the
ROFR and Co-Sale Agreement had been met or waived with respect to the October
2006 Sales, despite the fact that § 3.1 of the ROFR and Co-Sale Agreement imposes
upon the Founders a duty to provide such notice.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VERIFIED SECOND AMENDED COMPLAINT

92.     In order for the Founders to sell their stock in the October 2006 sales, the Spot Runner Board of Directors had to waive the Company's rights of first refusal pursuant to the ROFR and Co-Sale Agreement.  In the normal course of business, discussion of this issue would take place at a Board meeting.

93.     The Board Observer Rights Agreement gave WPP the right to be privy to Board discussions including discussions about the Company's decisions to waive its rights of first refusal.  The Board Observer Rights Agreement created a relationship of trust and confidence between WPP, Spot Runner, and the members of the Board.

94.     The Director Defendants – Lee, Rimer, Pittman, Grouf and Waxman – intentionally withheld any mention of the Founders' stock sales from Board meetings. The Director Defendants did so for the purpose of depriving WPP of its rights under the Board Observer Rights Agreement and concealing from WPP the existence and magnitude of the October 2006 Sales – so that WPP would continue investing in the Company which was integral to Defendants' scheme.

95.     As a result of Defendants' fraudulent scheme, WPP received no notice of the October 2006 Sales under the ROFR and Co-Sale Agreement, and was wholly unaware of these sales, even though WPP had Board Observer rights and the right under the ROFR and Co-Sale Agreement to receive notice of any proposed sale by the Founders.

**Defendants' Spring 2007 Sales and WPP's Spring 2007 Purchase**

96.     In the spring of 2007, the Company held another round of common stock financing (the "Common Stock Financing Round").

97.     Unbeknownst to WPP, Grouf and Waxman secretly sold their shares at that time, along with Battery and Index (the "Spring 2007 Sales").  According to admissions made to WPP in March 2009, as part of the Spring 2007 Sales, Grouf sold 525,939 shares of his Company common stock at $4.66 a share for $2,450,876, Waxman sold 123,392 shares of his Company common stock for $575,007, and Battery and Index both sold 525,939 shares of their converted Company stock for $2,450,876 each.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

19

98.   The Founders, Grouf and Waxman, intentionally failed to provide notice to WPP of these stock sales despite the duty imposed on the Founders to provide such notice by the ROFR and Co-Sale Agreement § 1.2.

99.   The Founders' failure to disclose their stock sales to WPP was a material omission by the Founders, committed for the purpose of deceiving WPP into believing that the Founders were not selling their stock so that WPP would continue to invest in Spot Runner.

100.   There was no legally effective waiver of WPP's rights that would relieve the Founders of this duty of disclosure.

101.   The Defendants knew that if WPP learned of the Founders' stock sales, WPP would stop investing in Spot Runner.

102.   The Founders Grouf and Waxman agreed with Battery and Index that Battery and Index would purport to waive WPP's rights pursuant to the ROFR and Co-Sale Agreement to receive notice of the Founders' Spring 2007 Sales, in exchange for Battery and Index participating in the Spring 2007 Sales.

103.   Battery and Index's purported waiver of WPP's notice rights did not actually relieve Grouf and Waxman of their duties to disclose because it did not meet the requirements of the ROFR and Co-Sale Agreement §§ 3.9 and 3.1.

104.   WPP received no notice of any purported waiver of WPP's rights with respect to the Spring 2007 Sales.

105.   There was no shareholder vote concerning any purported waiver of WPP's rights to receive notice of the Founders' Spring 2007 Sales.

106.   WPP received no notice of, or opportunity to participate in, any vote concerning any purported waiver of WPP's rights to receive notice of the Founders' Spring 2007 Sales.

107.   Battery and Index's intentional failure to hold the required vote, which would have provided notice to WPP of the Founders' stock sales, was a material omission.  Had the required shareholder vote been held pursuant to the ROFR and Co-

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VERIFIED SECOND AMENDED COMPLAINT

1    Sale Agreement, WPP would have received notice of the Founders' stock sales.

2         108.   There was no waiver of notice rights on behalf of all Investors, in that

3    Battery and Index received notice of and participated in the Spring 2007 Sales.

4         109.   The Founders did not provide notice to WPP that the requirements of the

5    ROFR and Co-Sale Agreement had been met or waived with respect to the Spring 2007

6    Sales, despite the fact that § 3.1 of the ROFR and Co-Sale Agreement imposes upon the

7    Founders an obligation to provide such notice.

8         110.   The Founders' failure to provide notice pursuant to § 3.1 of the ROFR and

9    Co-Sale Agreement of the purported waiver of WPP's notice rights was a material

10   omission by the Founders, committed for the purpose of deceiving WPP into believing

11   that the Founders were not selling their stock so that WPP would continue to invest in

12   Spot Runner.

13        111.   The Defendants knew that if WPP learned of the Founders' stock sales,

14   WPP would stop investing in Spot Runner.

15        112.   In order for the Founders to sell their stock in the Spring 2007 Sales, the

16   Spot Runner Board of Directors had to waive the Company's rights of first refusal

17   pursuant to the ROFR and Co-Sale Agreement.  In the normal course of business, this

18   discussion would take place at a Board meeting.

19        113.   The Director Defendants – Lee, Rimer, Pittman, Grouf and Waxman –

20   intentionally withheld any mention of the Founders' stock sales from Board meetings.

21   The Director Defendants did so for the purpose of depriving WPP of its rights under the

22   Board Observer Rights Agreement and concealing from WPP the existence and

23   magnitude of the sales of stock by the Founders and other Defendants – so that WPP

24   would continue investing in the Company which was integral to Defendants' scheme.

25        114.   This was a material omission by the Director Defendants Lee, Rimer,

26   Pittman, Grouf and Waxman.

27        115.   As a result, WPP received no notice of the Spring 2007 Sales under the

28   ROFR and Co-Sale Agreement, and was wholly unaware of these sales, even though

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

21

1    WPP had Board Observer rights and the right under the ROFR and Co-Sale Agreement

2    to receive notice of any proposed sale by the Founders.

3        116.   Meanwhile, by letter dated April 17, 2007, Huie, as General Counsel of the

4    Company, sent WPP an offer for WPP to purchase Company stock pursuant to a new

5    issuance by the Company.

6        117.   On May 10, 2007 WPP received a letter (the "May 10 letter") from Spot

7    Runner informing it that the Company had sold shares of common stock to an

8    institutional investor.  The letter further informed WPP that the investor "has expressed

9    a desire to purchase additional shares of common stock.  The Company currently does

10   not need additional capital but has offered to help facilitate sales of common stock by

11   existing stockholders (if possible)."

12       118.   The May 10 letter further stated that:

         Please note that we are notifying all preferred stockholders
13       and the founders of the Investor's desire to purchase
14       additional shares of common stock.  In order to ensure an
         orderly and efficient process, we will facilitate by allocating,
15       on a pro rata basis, the Investor's demand among the notified
16       stockholders, who have indicated an interest to sell.  There is
         no guarantee, however, that the Investor will be willing to
17       purchase any or all of the shares any of the notified
18       stockholders may decide to sell.

19

20       119.   The May 10 letter then asked WPP to return a form indicating whether it

21   was interested in selling shares to the investor.

22       120.   The May 10 letter was accompanied by a cover email from Huie to WPP

23   which, like the May 10 letter, referenced the opportunity to sell stock in a secondary

24   offering.

25       121.   The May 10 letter failed to disclose that Grouf, Waxman, Battery and

26   Index were engaged in a scheme to divert available investment monies away from the

27   Company to themselves, having already secretly sold millions of dollars of their own

28   Company stock, while the Company was losing tens of millions of dollars per year, and

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

22

intended to continue selling shares and diverting corporate opportunities pursuant to their scheme.

122.   On May 14, 2007, Grouf sent WPP an email summarizing WPP's investment options, which included selling shares in the secondary offering and purchasing shares in the new issuance.

123.   On May 15, 2007, WPP responded stating that it would like to proceed with the option of purchasing shares in the new issuance, as offered in the April 17, 2007 letter, to maintain its percentage ownership level.

124.   Later on May 15, 2007, Huie sent an email to WPP confirming that WPP will be purchasing additional shares and again referencing the opportunity to sell shares in the secondary offering.

125.   On Friday, May 18, 2007, there was an email exchange between Huie and WPP's counsel, Steven Manket.  Huie and Manket discussed both WPP's decision to purchase additional shares and the opportunity to sell shares in the secondary offering. In the penultimate email in the chain, after discussing WPP's decision to purchase additional stock, Huie made reference to the opportunity to sell shares "in a secondary" and asked Manket whether "WPP has signed the confirmation that they are not selling". Huie concluded the email by stating "WPP indicated earlier that they were passing on the sale option".

126.   In the last email in the Friday, May 18 email chain, Manket responded by "[c]onfirming that they are passing on the sale option".

127.   The next business day – Monday, May 21, 2007 – WPP's counsel Alexander Barry sent an email to Huie, copying Steven Manket, stating:

> "I wanted to quickly follow up *on your conversation with Steve Manket Friday* with a couple questions WPP has for its internal processes". (emphasis added)

128.   Barry was thus clearly following up on the email conversation on *Friday*, May 18, which left off with a discussion of the *sale* of shares in the *secondary* offering.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

23

129. Barry then specifically asked Huie:

> "Is there an existing investor and/or founder selling existing shares related to this offering?  If so, who is selling shares and how many shares are they selling?"

130. Thus, following up on the Friday conversation which left off discussing the opportunity to sell shares in the secondary offering, Barry on behalf of WPP was asking whether any Founder or other investor was "*selling existing shares* related to this offering" (emphasis added).  WPP was not asking whether any Founder or other investor was selling "existing shares" pursuant to the *new issuance* of stock by the Company – such a question would have made no sense and thus Huie *knew* that WPP was asking about secondary sales by the Founders or other Investors.

131. WPP was assured by reply e-mail from Mr. Huie that same day that

> "[t]his offering does not involve the sale of any existing shares.  It is an entirely new issuance by the Company."

132. Huie's response email was materially misleading in that, in the context of the email exchange and the exchange the previous Friday, it deliberately misled WPP into believing that no Founder or other investor was selling stock pursuant to the secondary offering.  In order to make his statement not misleading, it was incumbent upon Huie to state that Grouf, Waxman, Battery, and Index were selling their shares pursuant to the secondary offering.

133. Huie's failure to disclose the stock sales was a material omission.

134. On or about May 24, 2007, to maintain its percentage share of the Company's stock, WPP purchased 383,111 shares of common stock from the Company at $4.66 per share for a total investment of $1,785,297 in this round.

135. Had WPP known the Founders and other Defendants were selling large amounts of their Spot Runner stock, WPP would not have purchased the additional 383,111 shares of stock from the Company in May 2007.

136. As a direct result of Defendants' material omissions and acts of

24

concealment which were committed in furtherance of Defendants' fraudulent scheme,
WPP did not learn of these sales by the Founders and other Defendants.

137.   WPP reasonably relied on the fact that it had contractual arrangements in
place to provide notice of the Founders' stock sales, including the ROFR and Co-Sale
Agreement and the Board Observer Rights Agreement.  As detailed above, Defendants
intentionally circumvented these arrangements and deprived WPP of its rights under
these agreements and the securities laws by their material omissions and acts of
concealment in furtherance of their fraudulent scheme.

138.   WPP also reasonably relied on the fact that Huie was required to disclose
the Founders' and the other Defendants' stock sales as a result of WPP's direct inquiry
to Huie.  As detailed above, Huie intentionally misled WPP by omitting the material
fact of the Founders' and other Defendants' stock sales in the May 21, 2007 response to
WPP.

### Defendants' January 2008 Sales

139.   In January 2008, without the required notice to WPP and as part of the
ongoing scheme to usurp corporate opportunities and line the Defendants' pockets at
the expense of the Company and WPP, Grouf, Waxman, Battery and Index, along with
Director Pittman, again surreptitiously sold substantial quantities of their Spot Runner
stock (the "January 2008 Sales").  WPP only recently discovered in March 2009, that
the January 2008 sale shares included the following amounts:

| Seller | Number of Shares | Proceeds |
| --- | --- | --- |
| Nick Grouf | 1,126,575 | $6,759,450 |
| David Waxman | 119,109 | $714,654 |
| Battery | 750,853 | $4,505,118 |
| Index | 750,853 | $4,505,118 |
| Robert Pittman | 29,653 | $177,918 |

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VERIFIED SECOND AMENDED COMPLAINT

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

*The March 2008 Sales*

140.   Finally, in March 2008, Grouf, Waxman, Battery and Index, along with Director Pittman again sold Spot Runner shares, in the following amounts:

| Seller | Number of Shares | Proceeds |
| --- | --- | --- |
| Nick Grouf | 1,183,632 | $7,101,792 |
| David Waxman | 125,142 | $750,852 |
| Battery | 788,882 | $4,733,292 |
| Index | 788,882 | $4,733,292 |
| Robert Pittman | 31,155 | $186,930 |

141.   On this occasion, WPP was given notice of the proposed March 2008 secondary share sales by the Founders, Pittman, Battery and Index, and was offered an opportunity to sell shares pro rata with the Founders at that time.  But WPP was given no notice at the time that the same insiders had previously sold almost $40 million in Company stock, or that the financial condition of the Company should have precluded such sales.

142.   Undisclosed to WPP at the time, the proceeds from the sales of Defendants' secondary shares through March 2008 were over $54 million.

143.   The Defendants sold their shares even though the Company needed additional capital and thus breached their fiduciary duties to the Company by taking this opportunity to divert capital away from the Company so that they could profit from the sales of their own shares and/or the shares of their respective investment funds.

144.   By January 2008, WPP was becoming increasingly frustrated with the opacity of the Company's management which went against their assurances at the time WPP initially invested that management would operate the Company in a transparent fashion.  WPP had also heard rumors that insiders had sold off stock and WPP was seeking to obtain additional information about such sales.  All information requests were rebuffed.

145.   In March 2008, WPP was given the opportunity to sell shares only after

26

complaints to the Company that it was not happy with its investment in Spot Runner.
Grouf advised that because WPP was unhappy with the Company, he would help place
the sale of WPP's shares.  However, Spot Runner only permitted WPP to sell 152,273
of its Company shares in March 2008 for approximately $900,000, while the
Defendants took the opportunity to sell almost 2,917,652 of their Company shares in
March 2008 for approximately $17.8 million.  They did so without disclosing to WPP
that they had just sold another $18 million in Spot Runner common stock in January
2008, or that they had already received almost $40 million as a result of their sales of
Company stock in previously undisclosed sales.

146.   To date, Grouf and Waxman have received approximately $30 million
from sales of Company stock in breach of their fiduciary duties to the Company and to
WPP as a minority Investor under the ROFR and Co-Sale Agreement.

147.   To date, Battery and Index have received $24 million from sales of
Company stock in breach of their fiduciary duty to the Company, and to WPP as a
minority Investor.

148.   Although often requested by WPP, Spot Runner has never provided
audited financial statements to WPP in its capacity as a Board Observer or preferred
stockholder.  However, it has recently disclosed that the financial performance of the
Company through 2007 and 2008 did not justify the Defendants' extraordinary
diversion of opportunity for additional funding for the Company which came to light in
2009.

*The March 2009 Admissions*

149.   In March 2009, the Founders admitted to WPP the extent of their
previously undisclosed stock sales, and the financial condition of the Company which
should have precluded any such sales.  In addition to disclosing the stock sales listed
above, they revealed for the first time that Spot Runner's operations in 2007 and 2008
resulted in an approximate $35 million loss to the Company for the 2007 fiscal year,
and an approximate $45 million loss to the Company for the 2008 fiscal year; that the

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

27

1  total Company revenues for each year amounted to approximately $5 million for the

2  2007 fiscal year and $9 million for the 2008 fiscal year; and that the Company had

3  expended all but approximately $20 million of its investor capital, while still losing

4  money at the rate of $35-45 million per year.  Upon information and belief, the

5  Company had raised approximately $100 million from investors, and had already

6  expended approximately $80 million of those Investor dollars by the time of the March

7  2009 meeting – without completing development of its principal product.  Under the

8  circumstances, the Defendants' diversion of $54 million in available investment funds

9  to their own pockets was wholly unjustifiable, and in blatant breach of their fiduciary

10  duties to the Company and its stockholders.

### Additional Materiality Allegations

11

12  150.   The omissions set forth herein were material.

13  151.   In March 2009, the Founders admitted to WPP that they were

14  surreptitiously selling off millions of dollars of stock at a time when the Company was

15  losing millions of dollars per month on average and tens of millions of dollars per year,

16  and had not even completed development of its product.  The Founders' sales

17  constituted material information in that such sales were wholly at odds with the venture

18  capital fundraising being done for this start-up company, reduced the Founders'

19  investment risk and personal stake in the Company's success, and suggested that the

20  Founders did not believe in the Company or the products it had under development.

21  152.   The fact that the Founders of such an inchoate start-up company were

22  engaged in a scheme to surreptitiously divert millions of dollars of available investment

23  capital away from the Company and to themselves, thus using the Company as a

24  vehicle to line their own pockets while the Company was losing millions, would be

25  highly significant to a reasonable investor.

26  153.   The existence of the ROFR and Co-Sale Agreement demonstrates the

27  paramount importance of opportunities to obtain new investment capital and the

28  heightened significance of any sales of stock by the Founders of the Company, and thus

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

28

1  the materiality of the omissions.  The fact that an elaborate contractual arrangement was

2  developed for the purpose of alerting the Investors to Founders' sales of stock

3  demonstrates the significance of such sales to a reasonable investor.  Indeed, the ROFR

4  and Co-Sale Agreement expressly states that it is "a condition to the closing of the sale

5  of the Series C Preferred to the Series C Investors" – which included the initial $10

6  million investment by WPP.

7  154.   Because the Founders' stock sales constituted material information, the

8  fraudulent conduct and omissions by Defendants to disclose such sales were material.

9  155.   For the same reasons, the fact that insiders Battery and Index participated

10  in the Founders' scheme and also sold off millions of dollars of stock as part of the

11  pump-and-dump scheme was also material information.

### Additional Scienter Allegations

12  156.   All of the Defendants acted with scienter in carrying out the fraudulent

13  scheme detailed herein, in that all of the Defendants acted with  knowledge.

14

15  157.   In addition, the Defendants also acted with the intent to deceive WPP so

16  that WPP would continue investing in Spot Runner, which was integral to Defendants'

17  scheme and allowed Defendants to sell their stock at increasing valuations while the

18  Company lost millions of dollars per month.

19  **A.   Additional Scienter Allegations Regarding Grouf and Waxman**

20  158.   Grouf and Waxman acted with the requisite scienter when they failed to

21  disclose the material fact of their stock sales to WPP despite the duties imposed on

22  them by the ROFR and Co-Sale Agreement, in that Grouf and Waxman knew of their

23  own stock sales and of the notice requirements imposed upon them by that Agreement.

24  Grouf and Waxman's knowledge is evident from the simple fact that these were their

25  own stock sales and they were parties to the Agreement.

26  159.   Grouf and Waxman thus acted with knowledge.

27  160.   In addition, Grouf and Waxman knew – based on, among other things, the

28  existence of the ROFR and Co-Sale Agreement – how significant their stock sales

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1   would be to WPP and that WPP would not continue to invest in or support Spot Runner

2   if WPP learned of the Founders' stock sales.  Grouf and Waxman deliberately

3   conducted their stock sales in secret and failed to disclose them to WPP so that WPP

4   would continue to invest in and support Spot Runner.  WPP's continued support of Spot

5   Runner was essential to the pump-and-dump scheme through which Grouf and

6   Waxman made millions of dollars of personal profit by diverting millions of dollars of

7   investment  monies away from the Company and into their own pockets while the

8   Company was losing money at the average rate of three to four million dollars per

9   month.

10        161.   The surreptitious manner in which Grouf and Waxman went about their

11  stock sales – *e.g.*, failing to provide the disclosures required by the ROFR and Co-Sale

12  Agreement §§ 1.2 & 3.1 and intentionally withholding any discussion of the stock sales

13  and the Company's rights of first refusal from Board of Directors meetings – further

14  evidences Grouf and Waxman's intent to deceive WPP.

15        **B.    Additional Scienter Allegations Regarding Battery and Index**

16        162.   Battery and Index acted with scienter when they concealed, failed to

17  disclose, and participated in the Founders' secret stock sales, while disregarding and

18  violating WPP's notice rights under the ROFR and Co-Sale Agreement.

19        163.   Battery and Index knew of the Founders' stock sales.  Battery and Index's

20  knowledge of the Founders' stock sales is evident from (i) the fact that Battery and

21  Index purported to waive WPP's rights in connection with the Spring 2007 Sales, albeit

22  that waiver was not legally effective because it did not meet the requirements of that

23  Agreement; (ii) the fact that, in exchange for providing the purported waiver, Battery

24  and Index were permitted to participate in the Spring 2007 Sales and did in fact sell

25  their own stock as part of the Spring 2007 Sales; (iii) the fact that, as alleged below, Lee

26  and Rimer knew of the Founders' stock sales as a result of the Company's rights of first

27  refusal with respect to such transactions, and Lee and Rimer's knowledge is imputed to

28  Battery and Index, respectively, because Lee and Rimer are General Partners of Battery

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

30

1   and Index, respectively.

2       164.   Battery and Index thus acted with knowledge.

3       165.   In addition, Battery and Index knew – based on, among other things, the

4   existence of the ROFR and Co-Sale Agreement to which they were parties – how

5   significant the Founders' stock sales would be to WPP and that WPP would not

6   continue to invest in Spot Runner if WPP knew of the Founders' stock sales.  Battery

7   and Index conspired with the Founders to conceal the Founders' stock sales so that

8   WPP would continue to invest in and support Spot Runner.  WPP's continued

9   investment in Spot Runner was essential to the pump-and-dump scheme through which

10  Battery and Index made millions of dollars of profit while the Company's financial

11  condition deteriorated.

12      166.   The surreptitious manner in which Battery and Index purported to waive

13  WPP's rights in the Spring of 2007, without notice to WPP, further evidences Battery

14  and Index's intent to deceive WPP.

15      167.   The fact that Battery and Index continued to participate in the scheme and

16  again purported to waive WPP's notice rights so they could secretly sell millions of

17  dollars of Company stock with the Founders in the January 2008 Sales without notice to

18  WPP, further evidences Battery and Index's intent to deceive WPP.

19      **C.   Additional Scienter Allegations Regarding Lee and Rimer**

20      168.   Lee and Rimer acted with scienter when they deliberately withheld from

21  Board meetings any mention of the Founders' stock sales or the waiver of the

22  Company's right of first refusal, in order to prevent WPP from learning of the

23  Founders' stock sales through WPP's status as a Board Observer.

24      169.   Lee and Rimer knew of the Founders' stock sales.  Lee and Rimer's

25  knowledge of the Founders' stock sales is evident from (i) the fact that, in order for the

26  Founders to sell their stock, the Spot Runner Board of Directors had to waive the

27  Company's rights of first refusal pursuant to the ROFR and Co-Sale Agreement, and so

28  Lee and Rimer as Directors would have been privy to that process on multiple

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

31

occasions; (ii) the fact that Battery and Index participated in the Spring 2007 Sales, and Battery's knowledge is imputed to its General Partner, Lee, and Index's knowledge is imputed to its General Partner, Rimer.

170.   Lee and Rimer thus acted with knowledge.

171.   In addition, Lee and Rimer knew – based on, among other things, the existence of the ROFR and Co-Sale Agreement – how significant the Founders' stock sales would be to WPP and that WPP would not continue to invest in and support Spot Runner if WPP knew of the Founders' stock sales.  Lee and Rimer deliberately withheld any mention of the Founders' sales from Board meetings for the purpose of depriving WPP of its Observer rights under the Board Observer Rights Agreement and concealing from WPP the existence and magnitude of the sales of stock by the Founders and other Defendants.  Lee and Rimer did this so that WPP would continue investing in and supporting the Company – which was essential to the pump-and-dump scheme through which Battery and Index, of which Lee and Rimer, respectively, were General Partners, made millions of dollars while the Company was losing millions.

172.   The deceptive conduct by Lee and Rimer – intentionally withholding discussion and votes on the Founders' stock sales from Board meetings when such discussion and votes should have occurred at Board meetings in the regular course of Board business – can only have been intended to deprive WPP of information as a Board Observer.  This conduct further evidences Lee and Rimer's intent to deceive WPP.

173.   Lee and Rimer's intent to deceive WPP into continuing to invest in and support Spot Runner is further evidenced by the fact that Lee and Rimer participated in the scheme and deliberately withheld information from WPP for personal benefit. Battery – of which Lee is a General Partner – and Index – of which Rimer is a General Partner – participated with the Founders in surreptitious stock sales on multiple occasions, selling off millions of dollars of Battery and Index's Spot Runner stock.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VERIFIED SECOND AMENDED COMPLAINT

### D.   Additional Scienter Allegations Regarding Pittman

174.   Pittman acted with scienter when he deliberately withheld from Board meetings any mention of the Founders' stock sales or the waiver of the Company's right of first refusal, in order to prevent WPP from learning of the Founders' stock sales through WPP's status as a Board Observer.

175.   Pittman knew of the Founders' stock sales.  Pittman's knowledge of the Founders' stock sales is evident from the fact that, in order for the Founders to sell their stock, the Spot Runner Board of Directors had to waive the Company's rights of first refusal pursuant to the ROFR and Co-Sale Agreement, and so Pittman as a Director would have been privy to that process.

176.   Pittman thus acted with knowledge.

177.   In addition, Pittman knew – based on, among other things, the existence of the ROFR and Co-Sale Agreement – how significant the Founders' stock sales would be to WPP and that WPP would not continue to invest in and support Spot Runner if WPP knew of the Founders' stock sales.  Pittman deliberately withheld any mention of the Founders' sales from Board meetings for the purpose of depriving WPP of its rights under the Board Observer Rights Agreement and concealing from WPP the existence and magnitude of the sales of stock by the Founders and other Defendants.  Pittman did this so that WPP would continue investing in and supporting the Company which was essential to the pump-and-dump scheme through which Pittman sold stock in January 2008.

178.   The deceptive conduct by Pittman – intentionally withholding any mention of the Founders' stock sales from Board meetings though these would have been the subject of Board meetings in the regular course of business – to deprive WPP of information as a Board Observer further evidences Pittman's intent to deceive WPP.

### *Additional Loss Causation Allegations*

179.   Spot Runner is a privately held company whose stock is not sold in any liquid, public market and has no publicly discernable market price.

33

180.   The Company was solely responsible for fixing the price of Company stock at all times relevant to this action.  As a result of Defendants' scheme to divert needed investment monies from the Company to their own pockets by deceptive conduct, and their deliberate deception of a principal investor, the price fixed by the Company in May 2007, and at all times thereafter, was fraudulent and misleading.

181.   Defendants' fraudulent conduct and material omissions concealed from WPP the fact that Defendants were diverting much-needed capital from the Company and that Defendants were more interested in making short-term profits off their shares than in making Spot Runner a profitable company.  WPP would not have invested in Spot Runner had it known these facts.

182.   Defendants' fraudulent scheme, and the material facts the Defendants omitted to disclose, directly caused WPP's loss of the $1.7 million WPP invested in additional shares of Spot Runner in May 2007.  Because of Defendants' undisclosed scheme to divert millions of dollars of needed investment monies from the Company to their own pockets rather than working towards the success and viability of the Company, the shares Spot Runner sold WPP in May 2007 were worthless when sold.  As later revealed in March 2009, Spot Runner was at all relevant times in need of the investment monies the Defendants diverted to themselves.  Spot Runner had not completed development of its principal product, Project Malibu, and its operating losses were exceeding revenues by three to four million dollars per month in May 2007 and throughout 2007 and 2008.  Moreover, the very existence of the Defendants' scheme itself was an undisclosed deceptive act aimed at one of Spot Runner's principal investors.  With the disclosure of the true facts about the Defendants' surreptitious scheme and the fraud being perpetrated upon one of Spot Runner's principal investors, no reasonable private investor would purchase Spot Runner securities.  Without a market, WPP's investment in Spot Runner is worthless.

### *State Court Action, Equitable Tolling, and Relation-Back*

183.   WPP filed its original complaint in this action on April 9, 2009 (the

34

"Original Federal Complaint"). The Original Federal Complaint contained all of the claims, including the state law claims, that are set forth in this Complaint.

184. On September 14, 2009, this Court (Judge Percy Anderson) granted (with leave to amend) Defendants' motion to dismiss the Original Federal Complaint as to the federal securities claims and declined to reach the state law claims.

185. On October 13, 2009, WPP filed its first amended complaint (the "First Amended Complaint"), which also contained all of the claims, including the state law claims, that are set forth in this Complaint.

186. On January 27, 2010, Judge Anderson issued an order again dismissing the federal securities claims without prejudice, and giving WPP leave to amend some of the claims against certain Defendants. Judge Anderson again declined to reach the state law claims "until the Court's jurisdiction over the case has been established".

187. On January 27, 2010, the case was transferred to Judge Dolly M. Gee.

188. WPP elected not to amend and on February 12, 2010, filed a notice with the District Court requesting a final order of dismissal without prejudice.

189. On February 25, 2010, this Court (Judge Gee) issued a final judgment of dismissal of this action without prejudice.

190. On March 17, 2010, WPP filed a notice of appeal of that portion of the judgment that dismissed its federal securities fraud claims.

191. On April 23, 2010, WPP filed a complaint in the Superior Court of the State of California for the County of Los Angeles, Case No. BC 436458, (the "State Court Complaint") against the same Defendants as those named in this Complaint. The State Court Complaint asserts claims identical to those asserted in Counts Three, Four, and Six of this Complaint. These same claims were also asserted in the Original Federal Complaint and First Amended Complaint in this action.

192. The purpose of WPP filing its state court claims in state court was to move forward expeditiously in this litigation rather than wait for the federal appellate process to run its course.

VERIFIED SECOND AMENDED COMPLAINT

193.   However, Defendants successfully moved to stay the state court action. Defendants asked the state court to defer any consideration of the state law claims to this Court in the event of a Ninth Circuit reversal.  Defendants argued in support of the stay that if the Ninth Circuit reversed the dismissal of WPP's federal securities claims, WPP should re-plead its state law claims in this Court and that this Court was the proper forum in which to litigate all of WPP's claims.  WPP opposed the stay, but the stay was nonetheless granted by the state court judge.

194.   The stay of the state court action remains in place to the present day and, by its terms, will remain in place until this federal action "runs its course".  Defendants have not answered the State Court Complaint and there has been no discovery or litigation activity other than activity relating to the stay motion and status updates to the state court as to the status of this federal action.

195.   Counts Two, Three, Four, Five and Six of this Complaint arise out of the same conduct, transactions, and occurrences as does Count One of this Complaint, and are identical to claims set forth in the Original Federal Complaint and First Amended Complaint in this action.  These claims thus properly relate back to the Original Federal Complaint, which was filed on April 9, 2009.

196.   Counts Three, Four, and Six of this Complaint are also subject to equitable tolling, as they are identical to claims that were previously pled in the State Court Complaint which was filed on April 23, 2010.

197.   Defendants have received timely notice of the filing of these claims, as a result of having been served with the State Court Complaint as well as the Original Federal Complaint and First Amended Complaint.  Defendants promptly moved against each of these three complaints.

(a)   The Original Federal Complaint was served on all Defendants between April 17 and April 24, 2009.  Defendants moved to dismiss the Original Federal Complaint on or about July 15, 2009.

(b)   The First Amended Complaint was served on all Defendants on or

36

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

about October 13, 2009.  Defendants moved to dismiss the First
Amended Complaint on or about October 30, 2009.

(c)     The State Court Complaint was served on all Defendants between May
19 and May 20, 2010.  Defendants moved to stay the state court action
on or about June 22, 2010.

198.   Because Counts Three, Four, and Six of this Complaint are identical to
claims that were previously pled in the State Court Complaint, as well as the Original
Federal Complaint and First Amended Complaint in this action, Defendants have
suffered no prejudice in gathering evidence related to these claims.

199.   WPP has acted in good faith and with reasonable diligence in filing the
claims in this Complaint.  As set forth above, WPP originally filed its state law claims
together with the federal securities claims in this Court.  After this Court dismissed the
federal securities claims and declined to reach the state law claims, WPP pursued the
state law claims diligently by promptly filing those claims in state court.  WPP's efforts
to move the state law claims forward were thwarted by Defendants' successful stay
motion in state court, which WPP opposed.  Now that the dismissal of certain federal
securities claims (Count One of this Complaint) has been reversed by the Ninth Circuit
and this Court's jurisdiction has been established, the most expeditious course and most
efficient use of judicial resources is to re-join the pendent state law claims into this
action.

200.   Because there has been no answer, discovery, or other activity in the
stayed state court action, there will be no prejudice to Defendants, nor any waste of
judicial resources, in re-joining the pendent state law claims in this action.

VERIFIED SECOND AMENDED COMPLAINT

## COUNT ONE

**Securities Fraud in Violation of Securities Exchange Act Section 10(b)**

**and Rule 10b-5 Promulgated Thereunder**

**Material Omissions**

**(Against Grouf and Waxman)**

201.   WPP hereby realleges and incorporates by reference paragraphs 1 through 200 of the Complaint as if fully set forth herein.

202.   WPP asserts this Count against Defendants Grouf and Waxman under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

203.   The May 2007 sale of shares of Spot Runner stock to WPP constituted a sale of securities under Exchange Act Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  The said securities sale took place in and affected interstate commerce.

204.   As alleged in more detail, *supra*, in connection with that securities sale, Defendants Grouf and Waxman made material omissions of fact which were intended to and did deceive WPP into continuing to invest in the Company by concealing from WPP the fact that Grouf and Waxman were selling off their shares in large quantities.

205.   As set forth in further detail above, Defendants Grouf and Waxman recklessly, knowingly and/or with an intent to defraud committed material omissions of fact accompanied by a duty to disclose with the intent and effect of deceiving WPP into believing that Grouf and Waxman were not selling their shares and causing WPP to invest further capital in the Company.

206.   The Founders of the Company – Defendants Grouf and Waxman – committed material omissions of fact in their deliberate failure to disclose their stock sales to WPP despite duties imposed on them by § 1.2 of the ROFR and Co-Sale Agreement.  There was no legally effective waiver that excused the Founders of their duties under that Agreement.

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

38

207.   Grouf and Waxman also committed material omissions of fact by failing to provide notice to WPP that the requirements of the ROFR and Co-Sale Agreement had been met or waived with respect to their stock sales, despite the fact that § 3.1 of the ROFR and Co-Sale Agreement imposes upon the Founders an obligation to provide such notice.   Grouf and Waxman failed to provide such notice because such notice would have alerted WPP to the fact that the Founders were selling their stock.

208.   Grouf and Waxman, as Directors of Spot Runner, also committed material omissions of fact by intentionally withholding any mention of their stock sales, and the waiver of the Company's rights of first refusal with respect to such sales, from Board of Directors meetings.   Grouf and Waxman, along with the other Directors, did so in violation of the duty arising from the relationship of trust and confidence formed among WPP, Spot Runner, and its Directors pursuant to the Board Observer Rights Agreement. Grouf and Waxman committed these omissions for the purpose of concealing from WPP the existence and magnitude of the sales of stock by Defendants so that WPP would continue investing in and supporting the Company.

209.   In purchasing an additional 383,111 shares of Spot Runner stock in May 2007, WPP reasonably relied on Grouf and Waxman's material omissions.   Grouf and Waxman's omissions led WPP to reasonably believe that they were not selling their shares of the Company.   WPP would not have acquired the additional Company stock had it known of those sales.

210.   The purpose, effect and result of Grouf and Waxman's violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder was to induce WPP to purchase Spot Runner stock in May 2007, something WPP would not have done had it known of Grouf and Waxman's sales.

211.   WPP reasonably relied on the fact that it had contractual arrangements in place to provide notice of the Founders' stock sales, including the ROFR and Co-Sale Agreement and the Board Observer Rights Agreement, and the fact that WPP's inquiry to Huie required the disclosure of such sales.   The material omissions of fact

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

39

1  deliberately circumvented all of these vehicles that should have provided WPP notice of

2  the Founders' stock sales.

3      212.   By deliberately committing material omissions of fact to deceive WPP,

4  Grouf and Waxman have engaged in acts of fraud and deceit in connection with the sale

5  of Spot Runner shares to WPP.

6      213.   As set forth in further detail above, as a direct and proximate result of

7  Grouf and Waxman's material omissions, WPP purchased worthless securities in a

8  company that (i) was a vehicle for Defendants' pump-and-dump scheme for quick

9  personal profit; and (ii) had no liquid market for its shares.  The over $1.7 million that

10 WPP paid to purchase additional Spot Runner shares in May 2007 was lost to

11 Defendants' fraudulent scheme.

12     214.   As a direct and proximate result of Grouf and Waxman's material

13 omissions, WPP has suffered substantial damages in an amount to be determined at

14 trial, but not less than $1.7 million, the purchase price for WPP's purchase of additional

15 shares as a result of Defendants' fraudulent conduct.

16                    **COUNT TWO**

17                  **Common Law Fraud**

18            **(Against Grouf and Waxman)**

19     215.   WPP hereby realleges and incorporates by reference paragraphs 1 through

20 214 of the Complaint as if fully set forth herein.

21     216.   As set forth in further detail above, Grouf and Waxman with an intent to

22 defraud committed material omissions of fact with the intent and effect of deceiving

23 WPP into believing that Grouf and Waxman were not selling their shares and causing

24 WPP to invest further capital in the Company.

25     217.   Grouf and Waxman had a duty to disclose to WPP, which they violated by

26 the omissions alleged herein.

27     218.   Grouf and Waxman committed material omissions of fact in their

28 deliberate failure to disclose their stock sales to WPP despite duties imposed on them

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

1   by § 1.2 of the ROFR and Co-Sale Agreement.  There was no legally effective waiver

2   that excused Grouf and Waxman of their duties under that Agreement.

3       219.   Grouf and Waxman also committed material omissions of fact by failing to

4   provide notice to WPP that the requirements of the ROFR and Co-Sale Agreement had

5   been met or waived with respect to their stock sales, despite the fact that § 3.1 of the

6   ROFR and Co-Sale Agreement imposes upon Grouf and Waxman an obligation to

7   provide such notice.  Grouf and Waxman failed to provide such notice because such

8   notice would have alerted WPP to the fact that Grouf and Waxman were selling their

9   stock.

10      220.   Grouf and Waxman, as Directors of Spot Runner, also committed material

11  omissions of fact by intentionally withholding any mention of their stock sales, and the

12  waiver of the Company's rights of first refusal with respect to such sales, from Board of

13  Directors meetings.  Grouf and Waxman, along with the other Directors, did so in

14  violation of the duty arising from the relationship of trust and confidence formed among

15  WPP, Spot Runner, and its Directors pursuant to the Board Observer Rights Agreement.

16  Grouf and Waxman committed these omissions for the purpose of concealing from

17  WPP the existence and magnitude of the sales of stock by the Defendants so that WPP

18  would continue investing in and supporting the Company.

19      221.   In purchasing an additional 383,111 shares of Spot Runner stock in May

20  2007, WPP justifiably relied on the false impression created by Grouf and Waxman's

21  material omissions.  The omissions led WPP to reasonably believe that Grouf and

22  Waxman were not selling their shares of the Company.  WPP would not have acquired

23  the additional Company stock had it known of those sales.

24      222.   WPP justifiably relied on the fact that it had contractual arrangements in

25  place to provide notice of the Founders' stock sales, including the ROFR and Co-Sale

26  Agreement and the Board Observer Rights Agreement, and the fact that WPP's inquiry

27  to Huie required the disclosure of such sales.  Grouf and Waxman's material omissions

28

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

41

1  of fact deliberately circumvented all of these vehicles that should have provided WPP

2  notice of their stock sales.

3      223.   As set forth in further detail above, as a direct and proximate result of

4  Grouf and Waxman's fraud, WPP purchased worthless securities in a company that (i)

5  was a vehicle for Defendants' pump-and-dump scheme for quick personal profit; and

6  (ii) had no liquid market for its shares.  The over $1.7 million that WPP paid to

7  purchase additional Spot Runner shares in May 2007 was lost to Defendants' fraudulent

8  scheme.

9      224.   As a direct and proximate result of Grouf and Waxman's fraudulent acts,

10  WPP has suffered substantial damages in an amount to be determined at trial, but not

11  less than $1.7 million, the purchase price for WPP's purchase of additional shares as a

12  result of Grouf and Waxman's fraudulent conduct.

**COUNT THREE**

**Breach of Fiduciary Duty to Spot Runner**

**(Derivative Suit Against Grouf, Waxman, Lee,**

**Rimer, Pittman, Battery and Index)**

17      225.   As a derivative claim brought on behalf of the Company, Spot Runner,

18  Inc., WPP hereby realleges and incorporates by reference paragraphs 1 through 224 of

19  the Complaint as if fully set forth herein.

20      226.   As members of the Board of Directors of Spot Runner, Defendants Grouf,

21  Waxman, Lee, Rimer, and Pittman were fiduciaries toward Spot Runner and owed Spot

22  Runner the duty of faithfully, loyally, diligently, prudently, honestly, and carefully

23  conducting Spot Runner's business.  As fiduciaries, they were bound to act toward and

24  deal with Spot Runner and its other stockholders with the utmost fidelity, loyalty, care

25  and good faith.

26      227.   As a combined majority shareholder and control group of Spot Runner,

27  having purported to use their combined 60% voting power to act together to attempt to

28  waive Investors' rights, Defendants Battery and Index were fiduciaries toward Spot

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

42

1   Runner and owed Spot Runner the duty of faithfully, loyally, diligently, prudently,

2   honestly, and carefully conducting Spot Runner's business.  As fiduciaries, they were

3   bound to act toward and deal with Spot Runner and its other stockholders with the

4   utmost fidelity, loyalty, care and good faith.

5   228.   Grouf, Waxman, Lee, Rimer, Pittman, Battery and Index have violated

6   their fiduciary duties by usurping from Spot Runner the opportunity to raise capital

7   through the sale of shares of its stock to new investors and instead taking those

8   opportunities for themselves.

9   229.   Grouf, Waxman, Lee, Rimer, Pittman, Battery and Index have done so for

10  self-serving, improper and bad-faith reasons, namely, a desire to profit from the sales of

11  their secondary shares.  There is no legitimate business justification for their actions.

12  They have acted willfully, wantonly and with reckless disregard for the well-being of

13  Spot Runner.

14  230.   Grouf, Waxman, Pittman, Battery and Index usurped corporate

15  opportunities by selling their own shares and thus benefited directly from their

16  wrongdoing and breaches of fiduciary duty.

17  231.   Lee and Rimer, as General Partners and Board representatives of Battery

18  and Index, respectively, benefited directly from their wrongdoing and breaches of

19  fiduciary duty.

20  232.   As a direct and proximate result of the actions of Grouf, Waxman, Lee,

21  Rimer, Pittman, Battery and Index, Spot Runner has been damaged by being deprived

22  of significant amounts of needed capital and is moving swiftly toward insolvency.

23  233.   Because the wrongful transactions involved self-dealing and breaches of

24  the duty of loyalty by Grouf, Waxman, Lee, Rimer, Pittman, Battery and Index,

25  Defendants' decisions in connection with these transactions are not protected by the

26  business judgment rule.

27  234.   To remedy the Defendants' breach of fiduciary duties to Spot Runner, the

28  Company is entitled to money damages and the imposition of a constructive trust on the

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

43

1  proceeds of all of the secondary sales completed by Defendants in violation of their

2  fiduciary obligations to the Company.

3  ## COUNT FOUR

4  ### Aiding and Abetting Breach of Fiduciary Duty to Spot Runner

5  ### (Derivative Suit Against Battery and Index)

6  235.   WPP hereby realleges and incorporates by reference paragraphs 1 through

7  234 of the Complaint as if fully set forth herein.

8  236.   Defendants Battery and Index knowingly participated in the breaches of

9  fiduciary duties by Director Defendants Lee, Rimer, Grouf, and Waxman set forth in

10  Count Three above.

11  237.   Battery and Index knowingly participated in breaches by Lee and Rimer

12  by, among other things, participating in the stock sales that were opportunities for the

13  Company to raise needed capital.  Battery and Index enabled Lee and Rimer,

14  respectively, to engage in self-dealing and usurpation of corporate opportunities in that

15  such opportunities were diverted to Battery and Index, of which Lee and Rimer,

16  respectively, were General Partners and Board representatives.

17  238.   Battery and Index knowingly participated in breaches by Founders Grouf

18  and Waxman by, among other things, conspiring with Grouf and Waxman to purport to

19  waive WPP's rights to receive notice of Grouf and Waxman's Spring 2007 Sales

20  pursuant to the ROFR and Co-Sale Agreement, and concealing Grouf and Waxman's

21  Spring 2007 Sales, in return for being permitted to participate in the Spring 2007 Sales

22  and thus sell off millions of dollars of their own stock.

23  239.   As a direct and proximate result of the breaches that Battery and Index

24  aided and abetted, Spot Runner has been damaged by being deprived of significant

25  amounts of capital and is moving swiftly toward insolvency.

26  240.   To remedy Battery and Index's aiding and abetting of breaches of fiduciary

27  duties to Spot Runner, the Company is entitled to money damages and the imposition of

28  a constructive trust on the proceeds of all of the secondary sales completed by

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

44

Defendants in violation of their fiduciary obligations to the Company.

## COUNT FIVE

### Breach of Fiduciary Duty to WPP

### (Against Grouf, Waxman, Lee, Rimer, Pittman, Battery and Index)

241.   WPP hereby realleges and incorporates by reference paragraphs 1 through 240 of the Complaint as if fully set forth herein.

242.   As members of the Board of Directors of Spot Runner, Defendants Grouf, Waxman, Lee, Rimer, and Pittman were fiduciaries toward WPP as a minority shareholder and owed a duty to act toward and deal with WPP faithfully, loyally, honestly, and in good faith.

243.   As a combined majority shareholder and control group of Spot Runner, having purported to use their combined 60% voting power to act together to attempt to waive Investors' rights, Defendants Battery and Index were fiduciaries toward minority shareholder WPP and owed a duty to act toward and deal with WPP faithfully, loyally, honestly, and in good faith.

244.   Grouf, Waxman, Lee, Rimer, Pittman, Battery and Index have violated their fiduciary duties to WPP by failing to deal honestly and in good faith with WPP and engaging in a scheme to conceal from WPP the material fact of the Founders' and other Defendants' stock sales, and to deprive WPP of its notice rights under the ROFR and Co-Sale Agreement and the Board Observer Rights Agreement.

245.   Grouf, Waxman, Lee, Rimer, Pittman, Battery and Index have done so for self-serving, improper and bad-faith reasons, namely, a desire to profit from the sales of their secondary shares of the Company to new investors.  There is no legitimate business justification for their actions.  They have acted dishonestly and in bad faith towards WPP and with reckless disregard for the interests of WPP as a minority shareholder.

246.   As a direct and proximate result of the Defendants' actions, WPP has been damaged in an amount to be determined at trial, but no less than $11.7 million.

45

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

## COUNT SIX

### Breach of Contract

### for Breach of the ROFR and Co-Sale Agreement

### (Against Grouf and Waxman)

247.   WPP hereby realleges and incorporates by reference paragraphs 1 through 246 of the Complaint as if fully set forth herein.

248.   The ROFR and Co-Sale Agreement is a binding and valid contract between Grouf, Waxman, Spot Runner and the Investors in Spot Runner, including Battery, Index, and WPP.

249.   WPP has fulfilled all of its obligations under this Agreement.

250.   Grouf and Waxman breached the ROFR and Co-Sale Agreement, and the covenant of good faith and fair dealing implied therein, by, among other things, (i) failing to provide notice to WPP of Grouf and Waxman's stock sales pursuant to § 1.2 of the Agreement; and (ii) failing to provide notice to WPP pursuant to § 3.1 of the ROFR and Co-Sale Agreement that the requirements of that Agreement had been met or waived with respect to the Founders' stock sales.

251.   There was no legally effective waiver of WPP's rights that would relieve the Founders of these duties of disclosure under the Agreement.

252.   By virtue of the breaches of the ROFR and Co-Sale Agreement, WPP has been damaged in an amount to be determined at the time of trial, but no less than $11.7 million.

VERIFIED SECOND AMENDED COMPLAINT

1   **WHEREFORE**, Plaintiff WPP Luxembourg Gamma Three Sarl requests

2   judgment as follows:

3   A.   On Counts One and Two, awarding WPP damages in an amount to be

4   determined at trial, but no less than $1.7 million;

5   B.   On Counts Three and Four, awarding damages derivatively on behalf of

6   Spot Runner in an amount to be determined at trial, and imposing a constructive trust on

7   all proceeds from Defendants' improper sales of their shares of Spot Runner stock;

8   C.   On Counts Five and Six, awarding WPP damages in an amount to be

9   determined at trial, but no less than $11.7 million;

10   D.   Awarding attorneys' fees to the extent authorized by contract or statute;

11   and

12   E.   Granting such other and further relief as the Court deems just and proper,

13   together with the costs and disbursements of this action.

15   Dated:  March 30, 2012

16                                    DAVIS & GILBERT LLP

17                                    PAUL F. CORCORAN

18                                    VENABLE LLP

19                                    BEN D. WHITWELL

21

22   By _____

23                                    Ben D. Whitwell
                                     Attorneys for Plaintiff

**VENABLE LLP**
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

47

VERIFIED SECOND AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff WPP Luxembourg Gamma Three Sarl demands a trial by jury as to all issues so triable.

Dated:  March 30, 2012

DAVIS & GILBERT LLP
PAUL F. CORCORAN

VENABLE LLP
BEN D. WHITWELL

By _____
Ben D. Whitwell
Attorneys for Plaintiff

VENABLE LLP
2049 CENTURY PARK EAST, #2100
LOS ANGELES, CALIFORNIA 90067
(310) 229-9900

48

VERIFIED SECOND AMENDED COMPLAINT